IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

### MIDDLE DISTRICT—HARRISBURG 1855.

## Barclay *versus* The Commonwealth.

Where a nuisance consists not of a building itself, but in a *wrongful use* of it, the remedy is to stop such *use*, not to remove the structure.

On a conviction for nuisance, it is error in the Court to order the nuisance to be abated by the sheriff in the first instance, that being a part of the judgment given against the defendants; but if they fail to comply with the sentence, the Court may command the sheriff to abate it at their costs.

ERROR to the Quarter Sessions of *Bedford county*.

This was an indictment for erecting and maintaining a nuisance.

The town of Bedford was laid out by the Penns in 1766, and on the 9th January, 1793, they conveyed a number of lots adjoining the town to Hugh Barclay, with the following reservation: "excepting and reserving nevertheless out of the said $7\frac{1}{2}$ acres, 1 acre thereof, including the springs, for the use and benefit of the inhabitants of the town of Bedford, particularly for supplying their general pump with water." The authorities never laid off the acre until 1853 or 1854; but they took possession of the springs, and had the water conveyed by pipes into the town. The barn complained of as a nuisance was built on the land conveyed by the Penns in 1841, by S. M. Barclay, who was then the owner of the land, and adjacent to the springs. He died, and by his will devised this land to S. M. Barclay, one of the defendants in this prosecution, and other children of Dr. F. B. Barclay. Riseling, the other defendant, was a tenant under the devisees.

The indictment charged, that the defendants had erected a barn near to and above these springs, and that, by the storing of hay.

straw, and other vegetable matter in the barn, and the feeding of the same to the defendant's cattle, and the keeping cattle there, the water of the springs was rendered impure and corrupted, and unfit for use.

The second laid that the barn had been built by S. M. Barclay in his lifetime, and that by reason of keeping his cattle, &c., there, the waters of the springs had been corrupted and rendered impure, and that the defendants maintained and continued it to the common nuisance, &c.

The defendants pleaded not guilty.

The jury found the defendants guilty on the second count, but not guilty on the first count.

The Court sentenced the defendants to pay a fine of $1—pay the costs of prosecution, and be in custody until the sentence be complied with, and commanded the sheriff of the county to abate the nuisance by removing the barn.

Errors assigned: 1. The Court erred in directing the nuisance to be abated by the sheriff.

2. Also in commanding him to do so by removing the barn.

*Russell,* for plaintiff in error.—The Court erred in commanding the sheriff to abate the nuisance in the first instance. The defendants should have been sentenced to abate it: Taggart *v.* The Commonwealth, 9 *Harris* 530. If the defendants fail to comply with the sentence, then a *writ* would issue to the sheriff for that purpose: *Id.* 532. The Court in this instance gave the defendants no opportunity to abate it themselves. They had ceased to use it in a manner injurious to the springs since the indictment in this case had been found by the grand jury.

2. Was it the barn itself, or the manner in which it and the barnyard were used, that constituted the nuisance? The grievance complained of is the keeping and feeding of cattle in the barn and barnyard, by which the waters have been rendered impure. If they are not *used* in that way, no injury will result to the water. There is no complaint in the second count against the defendants for maintaining and continuing the barn. There was therefore error in ordering the barn to be removed.

*Boyd* and *King* (with whom were *Cessna* and *Jordan*), for defendants in error.—In the case of Taggart *v.* The Commonwealth, the question was whether it was not exercising too much severity to impose the duty of abating the nuisance upon the defendant, and at his own expense. It was distinctly stated that the Court had the power to issue a writ commanding the sheriff to abate the nuisance: 9 *Harris* 530. But the defendants here can remove all cause of complaint by removing the barn themselves. The ob-

[Barclay v. The Commonwealth.]

jection is merely technical: 6 *Binn.* 403; 3 *Ser. & R.* 199; 2 *Barr* 244.

2. The Court instructed the jury that there could be no conviction on the first count, for the reason that defendants had not *erected* the barn. In the second count the facts are properly laid by charging that the barn had been erected by S. M. Barclay, and maintained by him as a nuisance, and that the defendants had continued the same. The verdict is conclusive of these facts, and the Court was right in ordering the nuisance to be abated.

The opinion of the Court was delivered by

WOODWARD, J.—After much consideration it was settled in Taggart's Case, 9 *Harris* 527, that, on conviction for a continuing nuisance, the defendant, besides being sentenced to fine and imprisonment, should be ordered also to abate the nuisance; and that if he failed to do so, a writ, founded on such a judgment, might issue to the sheriff, requiring *him* to abate the nuisance, at the costs of the defendant.

The Court in this case entered no judgment against the defendant that the nuisance should be abated, but ordered the sheriff to abate it by removing the barn.

This was erroneous, not only because the defendant should have been sentenced, as in Taggart's Case, but because of the order for the removal of the barn. The defendant was acquitted on the first count, which charged the *barn* with being a nuisance, and was convicted only on the second count, wherein the erection of the barn is alleged by way of inducement to the offence, which is described as putting hay, straw, and other products of the farm in said barn, and keeping horses, mules, cattle, and other animals in and about said barn, and in the yard adjacent thereto, and feeding the said cattle, horses, and other animals with the aforesaid hay and straw and other products in said barn, and in the said yard near to the aforesaid springs, &c. The offence laid in this count consisted in the *use* made of the barn and yard in close proximity to the springs, and the nuisance would be effectually abated by discontinuing such use. Where an erection or structure itself constitutes the nuisance, as where it is put up in a public street, its demolition or removal is necessary to the abatement of the nuisance; but where the offence consists in a wrongful use of a building, harmless in itself, the remedy is to stop such use, not to tear down or remove the building itself. The barn may be used for storing hay and grain without annoyance to the public, but for stabling and feeding cattle it cannot be. The public are entitled to pure waters from the springs in question, and must be protected in the enjoyment of this right. The Court should take effectual measures to prevent the barn and yard from being used in the manner complained of, and to compel the defendant to put

[Barclay *v.* The Commonwealth.]

and keep them in such condition as will not corrupt the springs. If he fail to do so after being sentenced, the sheriff should be ordered to do it at his costs; and if necessary, the Court can restrain further wrongdoing on the part of the defendant, by requiring him to find security to be of good behaviour.

When, in the progress of agricultural science, the barnyard shall come to be regarded as among the most valuable of the farmer's possessions, as containing the fertilizing agents he needs on his fields, he will not wait for the criminal law to compel him to stop its leakings into the springs and watercourses below, but, with no other promptings than self-interest, will husband carefully this great source of wealth.

> The sentence is reversed, and the record remanded to the Quarter Sessions, with directions to proceed and sentence the defendant according to law.