Ebur et al. *v.* Alloy Metal Wire Co., Appellant.

178

Argued April 14, 1931. Before FRAZER, C. J., WALL-
ING, SIMPSON, KEPHART, SCHAFFER and MAXEY, JJ.

*John E. McDonough,* with him *R. Paul Lessy* and
*Michael S. S. Reps,* for appellant.—Even if the prayers
of the bill were of sufficient scope to warrant the find-
ings; even if the allegations in the bill accorded to the
complainants the right of the court to predicate findings
and prayer thereon, all that was established by the tes-
timony in this case was that the personal comfort, tastes
and pleasures or preference of the complainants were
involved; this, as we see at least from the ennunciations
of Pa. Co. v. Sun Co., 290 Pa. 404, is not only not within
the reach of a court of equity but is so vague and ill-
defined as to be beyond the reach of a common law ac-
tion in trespass. See Ribblett v. Cambria Steel Co., 251
Pa. 253.

The terms of the decree exceeded the prayer of the bill and it is impracticable to conform to them: Lawrence v. King, 299 Pa. 568; Luther v. Luther, 216 Pa. 1; Spangler Brewing Co. v. McHenry, 242 Pa. 522; King v. Trust Co., 278 Pa. 141; Eddy v. Boro., 281 Pa. 4; Reilly v. Magee, 272 Pa. 406.

The decree is incapable of execution: Collins v. Wayne Iron Works, 227 Pa. 326; Penna. Co. v. Sun Co., 290 Pa. 409; Ribblett v. Steel Co., 251 Pa. 253; Huckenstine's App., 70 Pa. 102; Richard's App., 57 Pa. 105; Daugherty Typewriter Co. v. Mfg. Co., 178 Pa. 215.

*A. B. Geary*, of *Geary & Rankin*, for appellees.—The right to relief is fully sustained by the cases cited by the chancellor and the following: Burke v. Hollinger, 296 Pa. 510; Nesbit v. Riesenman, 298 Pa. 475; Collins v. Iron Works, 227 Pa. 326; Krocker v. Mill Co., 274 Pa. 143; Sullivan v. Steel Co., 208 Pa. 540; Quinn v. Am. S. & M. Co., 293 Pa. 152.

The decree does not exceed the prayer of the bill: Collins v. Iron Works, 227 Pa. 326; Burke v. Hollinger, 296 Pa. 510.

OPINION BY MR. JUSTICE MAXEY, May 25, 1931:

This is a bill in equity for an injunction. The plaintiffs are residents of Prospect Park, Delaware County. The defendant is a corporation engaged in the business of manufacturing wire and metal products in a factory opposite the residences of the plaintiffs on Thirteenth Street. In this factory the defendant maintains furnaces in which oil and other fuels are burned. There are also hammers, cranes and other machinery and appliances. The plaintiffs allege that the defendant so operates these furnaces that there is discharged in the air, outside of said factory, smoke, offensive odors and a smudge which the plaintiffs and others are compelled to inhale, and this smudge enters the dwellings of the plaintiffs and soils and otherwise injures the furniture

and household goods, and the paint on houses, and destroys plants, shrubbery and other vegetation. The plaintiffs also claim that the cranes, machinery and appliances are so carelessly operated that there are loud noises and vibrations produced consisting of pots and other appliances knocking against each other. Plaintiffs aver that on account of these noises they are unable to enjoy the usual comforts of their dwellings, are unable to sleep, and are in various ways annoyed and injured.

This plant operates during the night and sometimes on the Sabbath. It is charged that defendant maintains in a yard within the clear vision of the plaintiffs and others piles of junk, cinders and other débris which interferes with the comfort of the plaintiffs and other residents of the community. Plaintiffs claim that the Borough of Prospect Park is a residential section and was so recognized as such before the defendant's factory was erected. It was shown at the trial that the four-track line of the Pennsylvania Railroad is within 150 yards of the plaintiffs' homes and about 122 heavy freight and passenger trains pass through that section daily. Some of these trains are electrically operated and some are propelled by steam. These latter trains emit smoke and cause noise and vibration as they pass. There are also some other industrial plants, such as a coal and lumber yard and a mixing house of a paving company, in the vicinity of plaintiffs' homes.

The prayers are for an injunction to restrain "the said defendant from so conducting its business in said factory that the smoke, odors, smudge, noises and the vibration will issue therefrom and from maintaining the piles of junk, cinders and other débris in its yards."

The defendant in its answer denies the main allegations of the plaintiffs. It denies that the Borough of Prospect Park is a residential section. It answers that the district in which the plant of the defendant was built by the DuPont Motors Company about ten years

ago was then and is now a part of the industrial district adjacent to and between the Cities of Philadelphia and Chester and that the whole of said district except mere portions thereof has been committed to industrial activity. The defendant avers that it has installed at great expense the most advanced and scientific appliances known to the business for the purpose of minimizing and eliminating entirely the emission of smoke, smudge and the creation of noises and other sounds resulting from the operation of its business.

The substance of the testimony offered by or on behalf of the plaintiffs is that smoke, flame and invisible gases are emitted from the defendant's plant; that the noise from the furnace is a type of reverberation, a drumming noise; that the vibration is sometimes sufficient to make the windows rattle; that when the furnaces are being started up there is a heavy oil smoke coming from the top of the furnaces; that there is the obnoxious odor of burning gases; that there is a smeary black deposit on the porches in the neighborhood; that the gases from the plant irritate the throat and have an unpleasant, stifling odor; that a smudge coming from this plant makes the carpets and furnishings difficult to keep clean; and that the reverberatory noises, the thundering noise from the furnaces, have grown worse, while the noise from the compressor has been improved. There is also an objectionable noise made by the workmen hammering on anvils.

Defendant offered testimony tending to contradict the testimony of plaintiffs' witnesses as to the amount of noise and smoke issuing from the plant.

The court found from the testimony the following facts, inter alia: Defendant maintains in its factory furnaces in which oil is burned, and also maintains cranes and other machinery and appliances; that it so operated said furnaces that there was discharged for a long time prior to the filing of the bill and thereafter smoke and offensive odors, gases and smudge which the

plaintiffs and others were compelled to inhale and a smudge which entered the dwellings of the plaintiffs and soiled the outside of the buildings and also the interior of the buildings and the furniture and household goods therein; that the cranes, machinery and appliances were so operated that there were loud noises consisting of clanging, grinding of gears against each other, metal grinding and knocking against other pieces of metal, noise emanating from a circular saw and other noises which carried to the dwellings of the plaintiffs and others in the neighborhood so that they were unable to enjoy the usual comforts of their homes, their sleep was disturbed, vibration was caused in their homes, and they were in other ways annoyed and injured; that the defendant operated its plant during nights and at times on the Sabbath; that during week days, also during nights, and also on the Sabbath, the smoke, odors, gases, smudge and noises and vibration continued; that the Borough of Prospect Park and the vicinity of the factory was a residential section before the time when the defendant took possession of the factory and started operations; and that by the operation of the factory the properties occupied by the plaintiffs have been seriously injured as residences and the comfort of the plaintiffs has been interfered with. The chancellor concluded as a matter of law that the business as conducted by the defendant was a nuisance and entered a restraining decree hereinafter discussed.

The courts have found it difficult to lay down any precise and inflexible rule by the application of which it can be determined that a plaintiff in a given case is entitled to relief by injunction against smoke, fumes and noises emitted in the vicinity of his residence. It has been said that a "fair test as to whether a business lawful in itself, or a particular use of property, constitutes a nuisance, is the reasonableness or unreasonableness of conducting the business or making the use of the property complained of in the particular locality and in the

manner and under the circumstances of the case": 46 C. J. 655. It has also been said: "Whether the use is reasonable generally depends upon many and varied facts. No hard and fast rule controls the subject. A use that would be reasonable under one set of facts might be unreasonable under another. What is reasonable is sometimes a question of law, and at other times, a question of fact. No one particular fact is conclusive, but the inference is to be drawn from all the facts proved whether the controlling fact exists that the use is unreasonable": 46 C. J. 656. No word is used more frequently in discussing cases of this kind than the word "reasonable," and no word is less susceptible of exact definition. What is reasonable under one set of circumstances is unreasonable under another. Custom itself has much to do with determining what is reasonable. Noises which in the preindustrial era would have been considered intolerably unreasonable are now tolerated as reasonable. The noise and smoke of railroad trains frequently passing human habitations is not now considered unreasonable, although an equal amount of noise and smoke would doubtless at an earlier time have been considered so. That a certain amount of smoke, fumes, gases and noises will necessarily be produced and emitted by manufacturing plants is inevitable, but that persons who dwell near such plants, like persons who dwell near railroads or on busy city streets, must put up with a certain amount of resulting annoyance and discomfort is self-evident. The prosperity of an industrial community depends on its industrial activities and it would be inconsistent with sound public policy to prohibit these activities at the behest of a comparatively few who are annoyed thereby. Every form of industrial activity has its disagreeable factors. Industries, like individuals, have "the defects of their qualities." In mining and manufacturing communities people must expect that their homes will be more difficult to keep clean than if they lived in an agri-

cultural community. A certain amount of noise also is inseparable from industrial activity. The burdens of prosperity must be taken with its benefits.

This court as long ago as 1871 said in Huckenstine's App., 70 Pa. 102, which was a case in which the plaintiffs sought to enjoin the defendant from making bricks on his land, in an opinion by Justice AGNEW: "A court exercising the power of a chancellor, whose arm may fall with crushing force upon the every-day business of men, destroying lawful means of support, and diverting property from legitimate uses, cannot approach such cases as this with too much caution. Its aid is not of right but of grace, and it must be sure that the exercise of this kingly power is just, wise and proper, before it takes from a citizen his means of livelihood, and destroys the value of his property for legitimate uses. And more than this, it must look at the customs of the people, the characteristics of their business, the common uses of property and the peculiar circumstances of the place wherein it is called upon to exercise the power. In no other way can its justice, wisdom and propriety be exhibited in adjudicating upon the rights, interests and employment of the people subjected to its power. ...... The properties of the plaintiff and defendant lie adjoining each other, on the hillside overlooking the city [Pittsburgh], whose every-day cloud of smoke from thousands of chimneys and stacks hangs like a pall over it, obscuring it from sight. This single word describes the characteristics of this city, its kind of fuel, its business, the habits of its people and the industries which give it prosperity and wealth. The people who live in such a city or within its sphere of influence do so of choice, and they voluntarily subject themselves to its peculiarities and its discomforts, for the greater benefit they think they derive from their residence or their business there."

This court in Sullivan v. Jones & Laughlin Steel Co., 208 Pa. 540, in an opinion by Justice BROWN, said: "The

City of Pittsburgh is a busy manufacturing center, and by day and by night clouds of smoke ascend from the stacks of its numberless mills, factories and furnaces, ofttimes hanging over it like a pall. In a manufacturing district of this city the appellee has established its furnaces and is engaged in an important and lawful business. The appellants, in a residential portion of the same city, close by this manufacturing district, own houses in which their tenants live. So situated, they must expect a measure of annoyance and discomfort, arising from the dust and smoke, which cannot be avoided in their manufacturing metropolis, and are borne to the homes of the city and fill the air that is breathed. To this general annoyance and discomfort appellants submitted for years without complaint, and they were bound to do so, for they chose to erect their houses not only in sight of great manufacturing plants, but within certain reach of the smoke and dust, without which the fires of the furnaces and factories could not burn."

It is well to keep in mind the foregoing judicial reasoning in considering cases such as the one now before us. While the findings of fact by the chancellor and later approved by the court in banc will not be reversed in the absence of manifest error (Murdock v. Murdock, 300 Pa. 280), and while the findings in this case were warranted by the testimony, we think the decree entered is out of harmony with the above and other decisions of this court and is of too sweeping a character.

Paragraphs (a) and (b) of the decree enjoin the defendant from operating its plant in the Borough of Prospect Park between the hours of 9 p. m. and 6 a. m. and from operating the plant on Sunday. There was no prayer in the bill for the restraint imposed upon defendant in these paragraphs. The language of Justice BROWN of this court in Spangler Brewing Co. v. McHenry, 242 Pa. 522, at 528, may be pertinently quoted in respect to these paragraphs of the decree: "In an-

swer to what prayer was it made? Proceedings in equity may be elastic, but there is a limit to their elasticity. They are not to be stretched to give relief from a specific wrong not averred in a bill of complaint or to make a decree not in conformity to its prayers." If the plaintiffs had prayed for the enjoining of the operations of the defendant's manufacturing plant between the hours of 9 p. m. and 6 a. m. and on Sundays, these paragraphs of the decree could be sustained as reasonable. A due regard for the rights of the plaintiffs and others in the neighborhood might well prompt the defendant to discontinue the operation of its plant at night and on Sundays. Smoke and noises to which one must accustom himself during the daytime and on week days may become so intolerable at nighttime and on Sundays as to be adjudged nuisances. As was said in Gilbough v. West Side Amusement Co., 64 N. J. Eq. 27: "Mankind needs sleep for a succession of several hours once in every twenty-four hours, and nature has provided a time for that purpose, to wit, the nighttime, and by common consent of civilized man the night is devoted to rest and sleep, and noises which would not be adjudged nuisances, if made in the daytime, will be declared to be nuisances if made at night and during the hours which are usually devoted by the inhabitants of that neighborhood to sleep."

Paragraph (c) of the decree enjoins and restrains the defendants "from issuing smoke, odors, gases and smudge, and creating noises and vibrations from its plant and buildings at any time to injuriously affect the plaintiffs in their health, and their homes, or with the reasonable enjoyment and comfort of their homes." According to medical authority all smoke and gases and noises injuriously affect to a degree the health of persons subject to them. It is obvious that smoke, odors, gases, smudge and noises injuriously affect a person's reasonable enjoyment and comfort of a home within an area subjected to these annoyances. However, every per-

son dwelling in an industrial community, and particularly near industrial plants, must to some extent bear the annoyance and injury of smoke, odors, gases, smudge and noises. If defendant must so operate and conduct its business that these things will not issue from its plant and buildings at any time to injuriously affect the plaintiffs in their health and comfort, the defendant cannot operate its plant at all, for it would be a physical impossibility to operate the plant and at the same time comply with the court's decree. The utmost protection the plaintiffs are entitled to from smoke, odors, gases, smudge and noises from the defendant's plant is from these things in amounts that are unnecessary and unreasonable under the circumstances. If the defendant's plant is emitting more of these annoying things than other plants in the same business and of equal output are emitting, there is something wrong with the equipment and management of the defendant's plant and the smoke, odors, gases, smudge and noises are unnecessary and unreasonable. If devices or more efficient management which would reduce the smoke, odors, gases, smudge and noises and vibrations issuing from its plant are available to the defendant at a reasonable expense, it is the duty of the defendant to secure such devices or management, and if it fails to do so, the smoke, noises, etc., emitting from its plant may be regarded as unnecessary and unreasonable.

Paragraph (d) of the decree enjoins the defendant from "working and operating said furnaces, tools, machinery and appliances of a noisy character at any time unless inside the buildings all windows and doors on the Thirteenth Avenue side, including the ventilator on the same side, are securely closed." This part of the decree appears to be reasonably warranted by the facts of the case. The defendant company ought to be able to ventilate its plant without opening the windows and doors on the side fronting the residences of the plaintiffs.

We think the decisions of this court in Collins v. Wayne Iron Works, 227 Pa. 326, 331, and Quinn v. Am. Steel Spring & Mfg. Co., 293 Pa. 152, may serve to guide the court below in further proceedings in this case.

In the first case cited, this court held: "No one is entitled to absolute quiet in the enjoyment of his property; he may only insist upon a degree of quietness consistent with the standard of comfort prevailing in the locality in which he dwells. ...... In a case like the present where the annoyance arises from the conduct of a business which is not a nuisance per se, a strong effort should be made to conserve the rights of all the properties; and an important question is, Can the noise by any reasonable means be so moderated as to accord with the degree of quietness the plaintiff has a right to enjoy; and, if it can, by what means? ...... The testimony suggests and is sufficient to sustain the further finding that the disturbance of the standard of comfort normally prevailing in the neighborhood of the plaintiff's residence, and the consequent annoyance to the plaintiff, are caused by the defendant's permitting the use of tools and apparatus of a noisy character on its premises outside of its buildings; by their use inside of certain of its buildings with the windows and doors open; and at times by the use of such tools and apparatus until late in the evenings. On this finding, a definite decree can be entered enjoining the defendant from operating tools, machines or apparatus of a noisy character between certain hours, and requiring it to carry on all such operations on the inside of buildings with windows securely closed and with the doors shut. This decree will probably afford the relief required. At least such a measure of relief should be first tried before the entry of a decree that may mean the closing of the defendant's works, the ruin of a prosperous business, and the loss of employment to many men." In that case the decree entered by the court below was modified and the defend-

ant and its employees were restrained "from working its plant in such a manner as to create the nuisance complained of, and to that end they are enjoined from operating drills, power hammers, power chippers, riveting machines or other tools, machines or apparatus of a noisy character between the hours of 7 p. m. and 7 a. m.; and from operating such tools, machines and apparatus of a noisy character at any time unless on the inside of buildings with all windows securely closed with double sash, and with the doors shut."

In the second case cited (Quinn v. Am. Steel Spring & Mfg. Co.), this court held that a defendant engaged in manufacturing iron and steel springs should be required, within such reasonable time as the court below shall direct, to so relocate and install their heavy machinery, as to cause a minimum of injury to plaintiff and his property, consistent with the reasonable operation of the plant; that, if they did not do so within the time specified, they should be enjoined from operating the machinery until they did. For the proper determination of these matters, leave was given to produce further evidence, if desired by the court or either party.

The present case presents a situation that ought to be worked out by all the parties in interest by each party making mutual concessions. Defendant's manufacturing plant should not be so restricted in its operation by the court's decree that it cannot operate at all. On the other hand, the executive officers of the defendant company ought to avail themselves of every known device that can be secured at a reasonable expense, and of the utmost thoughtfulness, care and effort to reduce to a minimum the offensive emanations from this plant. If the defendant does not do this, if it shows a callous disregard for the comfort and well-being of the people dwelling in that vicinity, it will invite a drastic injunctive decree.

No decree can be entered which will precisely define the quantity of offensive emanations from defendant's

plant which will just fall short of giving it the legal status of a nuisance. The injunctive "stop-signal" can best be left in the hands of the court below, to be used, however, in accordance with the principles laid down by this court in a long line of cases, some of which are herein referred to.

Leave is given the court below to take further evidence on the question whether or not the smoke, gas, noise, etc., are emitted by defendant's plant in quantities that are unnecessary and unreasonable under the circumstances. This is a question that can be determined only by consideration of all the attendant facts. Defendant is entitled to operate its plant, as the near-by railroad is entitled to operate its trains, but the plaintiffs are entitled to have that plant so operated as to cause them the minimum of discomfort and annoyance obtainable by the employment of such effective devices and efficient management as are fairly available.

The decree entered by the court below is modified; and it is now adjudged, ordered and decreed that the Alloy Metal Wire Company, its servants, agents and employees, are restrained from operating its plant in such a manner as to emit from said plant smoke, odors, gases, smudge, noises and vibrations which are unnecessary and unreasonable under the circumstances and which can be eliminated by the efficient operation of its plant and by the installation of the most effective reasonably available devices for the reduction of smoke, odors, gases, smudge, noises and vibrations in its plant, and it is further enjoined from operating said plant at any time unless all windows and doors on the Thirteenth Avenue side, including the ventilator on the same side, are securely closed.

The court below may, after the taking of further evidence as herein permitted, modify this decree, provided such modification is not inconsistent with this decree and opinion.

Costs to be paid by appellant.