This appeal is from a final decree in equity permanently enjoining defendants, Andrew F. Gallagher, the owner, and M. R. Krader, the lessor, from operating an airport on a certain tract of land, consisting of approximately 239 acres, situate in Willistown Township, Chester County.
Plaintiffs, real estate owners in the general vicinity, in their Bill of Complaint averred "that the proposed construction and operation of said airport will create in said residential and agricultural district a nuisance per se." After hearing on bill and answer the learned Chancellor concluded that operation of the proposed airfield would constitute such a nuisance and issued a restraining order. After exceptions were filed and argument had thereon, a final decree was entered making the injunction permanent and defendants brought this appeal.
Defendants contend strenuously that the evidence produced is insufficient to support the following conclusion of law: "The contemplated use of the premises . . . as an airfield, airport, or flying field will certainly and inevitably be a nuisance to plaintiffs." If this contention is correct, and the conclusion is not supported by the evidence, the bill must be dismissed. The burden of proof is upon plaintiffs. *Page 543 
Since this is a case of first impression in Pennsylvania, it seems advisable to summarize the few basic legal principles involved. It has been held in other jurisdictions that an airport is not a nuisance per se: Batcheller v. Commonwealth,176 Va. 109, 10 S.E.2d 529; Smith v. New England Aircraft Co.,Inc., 270 Mass. 511, 170 N.E. 385; Warren Twp. Sch. Dist. v.Detroit, 308 Mich. 460, 14 N.W.2d 134; that it may become a nuisance in fact from the manner of its construction or operation; Swetland v. Curtiss Airports Corporation, (C.C.A. 6 Cir.) 55 F.2d 201; Thrasher v. City of Atlanta, 178 Ga. 514,173 S.E. 817; see 2 C.J.S. Aerial Navigation, § 29; that the question whether a nuisance has been created depends on the circumstances of the particular case, for not every inconvenience, discomfort or annoyance is sufficient to constitute a nuisance: 39 Am. Jur., Nuisances § 30. See Penna.Co. v. Sun Co., 290 Pa. 404, 138 A. 909.
The pertinent facts are not in dispute. It is the conclusion to be drawn from them that is contested. A short time after construction was begun and before any planes had used this airport, this action was begun to prohibit the use of this property as an airfield. Even at the time of trial the field had been used only by a few small airplanes at infrequent intervals. It could not be generally used because construction had not been completed on either runway. Defendant Krader testified that the proposed airport was to be used only by airplanes powered by single engines, not in excess of two hundred horsepower. No night flying and no regularly scheduled commercial flights were contemplated from this field. Student pilot instruction was planned together with the sale of light airplanes and the renting of hangar space to private plane owners. The air traffic pattern, for planes landing and taking off, has not been definitely established. The east-west runway was designed to be 3000 feet long, and the north-south runway 2800 feet in length, when completed. *Page 544 
The surrounding countryside is rural and sparsely settled. Many country estates and farms are located throughout the general vicinity. The main line of the Pennsylvania Railroad, running east and west, is about one mile to the north of defendants' property. The north boundary of the proposed airport is located on Route 202, a main highway, heavily travelled by both pleasure cars and trucks. The only industrial plant in the area is located about a mile away. The various plaintiffs include the owners of eighteen country residences and representatives of three institutions. None of plaintiffs' buildings are closer than 500 feet and some are located over three miles away from the airfield in question.
Plaintiffs in their Bill of Complaint asserted that the proposed airport necessarily would become a nuisance for the following reasons: (a) the noise; (b) the danger of falling objects; (c) the dust; (d) interference with the Malvern School; (e) bright illumination at night; (f) the presence of large crowds; (g) depreciation of property values; (h) interference with the breeding of livestock. A careful examination of the record shows clearly that no serious attempt was made to prove any allegation but that noise from the airplanes would constitute a nuisance.
The Chancellor's findings of fact contained, inter alia, the following: "The operation of the airfield . . . as contemplated will certainly and inevitably cause hurt, inconvenience and annoyance to the reasonable enjoyment of the lands and hereditaments of plaintiffs, and will certainly and inevitably annoy and disturb plaintiffs in the possession of their properties, rendering the ordinary use and occupation thereof physically uncomfortable to plaintiffs."
The rule that findings of fact are ordinarily binding on an appellate court cannot be applied where there is no adequate evidence to justify the conclusion in question nor where the finding constitutes a mere deduction from facts actually proven. Lawrence v. King, 299 Pa. 568, *Page 545 150 A. 169; Brooks v. Conston, 356 Pa. 69, 51 A.2d 684.
A careful examination of the entire record has caused us to conclude that the evidence contained therein is entirely inadequate to prove the existence of a nuisance. A few random samples will illustrate how clearly it fails to sustain plaintiffs' burden of proof.
There was ample evidence to sustain the Chancellor's findings that the prevailing winds at the airfield were from the west and that airplanes ordinarily take off and land into the wind. Therefore, the property owners immediately to the west of the airport would be most frequently subject to any noise made by planes as they took off and were attempting to climb to a desirable flying altitude. Plaintiff Francis D. Crew and his wife, owned the property adjoining the airport's western boundary, and immediately beyond their property and to the west thereof was located the residence of plaintiffs Walter and Helen Allen. The testimony of Mr. Crew and of Mrs. Allen merits attention.
The Crew residence is located as close to the airport as any building owned by any plaintiff. He testified as follows: "Q. Is it not a fact that your testimony here today has been based upon the fact that there have been only one, two, or three planes at this airport? A. Yes, but our reason for objecting here today is not what has gone on in the past but what we expect in the future." All of plaintiffs' witnesses were allowed to indulge in this type of conjecture and to speculate as to what might occur in the future, e. g.: "It is going to be very objectionable."
Mrs. Helen Allen testified that she resided less than half a mile from the airport and that she had been annoyed by the noise of low flying planes. On direct examination she said: "If you are in the living room of our house and we have guests you practically have to scream to make them hear you if the planes are going over the house." On cross-examination, however, her testimony *Page 546 
was as follows: "Q. You don't know the altitude of these planes in feet when you saw them? A. I possibly have but they don't bother me, they are up high and the noise does not bother me. Q. They do go over the house? Not directly over the house. Q. How far from your house do they go, if you can judge? A. I can hardly say. They go across the field directly across the road from the house, and how wide that field is I don't know but they go directly across that field... Q. Those planes do not bother you at all? A. They haven't."
One of the plaintiffs was Rush Hospital, an institution located over a mile away. The Superintendent of the Hospital testified that the only private planes which had flown low over the grounds of the institution had done so "ten years ago." This incident admittedly had no connection with the proposed airfield.
Plaintiff, Elizabeth Odell, who resided almost a mile from the airport site, testified as follows: "Q. In your opinion what if any effect will that [operation of the airport] have on the peaceful enjoyment of your property by yourself and Mr. Odell? A. It will have a great effect on me. Q. In what regard? A. All my life I have had a very horrifying experience of planes." No useful purpose would be served by a further discussion of the testimony adduced by plaintiffs as it is wholly inadequate to sustain the allegations of their bill or the conclusion of the Chancellor.
There is nothing in the construction of an airfield, or in the necessary consequences of its normal operation in an agricultural district to create a nuisance. In Essick v.Shillam, 347 Pa. 373, 380, 32 A.2d 416, we held: "The court cannot anticipate an improper use of the premises and sanction a restraining order founded upon surmise and speculation as to the future conduct of defendants. In Rhodes et al. v. Dunbar et al., 57 Pa. 274, 287, it was stated: 'That a thing may possibly work injury to somebody is no ground for injunction. If the injury be doubtful, eventual or contingent, equity will not interfere by *Page 547 
injunction'." See White v. Country Club, 322 Pa. 147,185 A. 316.
Although the Aeronautical Code of May 25, 1933, P. L. 1001,[1] and the Air Commerce Act of 1926, 44 Stat. 568, 49 U.S.C. § 171, as amended by the Civil Aeronautics Act of 1938, 52 Stat. 973, 49 U.S.C. § 401, diminish the absolute rights that landowners had to the space above the surface of their land under the common law, they do not authorize the flight of aircraft at such low altitudes as to interfere with the reasonable use and enjoyment of land. See United States v.Causby, 328 U.S. 256. Whether or not a nuisance has been created depends upon the proven facts of each particular case:Delta Air Corporation v. Kersey, 193 Ga. 862, 20 S.E.2d 245.
The following excerpt from the opinion in Smith v. NewEngland, supra, at p. 517, under facts stronger than those proven in the instant case, is pertinent here: "... while the noise from the airplanes in flight over *Page 548 
their premises has caused them [plaintiffs] irritation and annoyance, yet gauged by the standards of ordinary people this noise is not of sufficient frequency, duration or intensity to constitute a nuisance."
In this case plaintiffs did not sustain their burden of proof. They have not shown any damage to their property or its use, or that they have suffered any material discomfort. The testimony discloses no additional volume of objectionable noise in comparison with the existing noise level in the immediate vicinity of the proposed airport. Farm tractors, passenger cars and heavy trucks on the adjacent highway, trains on the main line of the railroad nearby, the military and transport aircraft having no connection with the airport in question, already disturb the tranquillity of this neighborhood. "No one is entitled to absolute quiet in the enjoyment of his property; he may only insist upon a degree of quietness consistent with the standard of comfort prevailing in the locality in which he dwells.": Collins v. Wayne Iron Works, 227 Pa. 326, 331,76 A. 24.
After the establishment of a regular flight traffic pattern, if airplanes fly very close to plaintiffs' buildings, or in any other way cause real damage to plaintiffs' property, adequate relief in equity will be available to them.
The decree is reversed; the injunction is dissolved and the bill is dismissed at appellees' cost.
[1] "Section 401. Ownership of Space. — The ownership of the space over and above the lands and waters of this Commonwealth is declared to be vested in the owner of the surface beneath, but such ownership extends only so far as is necessary to the enjoyment of the use of the surface without interference, and is subject to the right of passage or flight of aircraft. Flight through the space over and above land or water, at a sufficient height, and without interference to the enjoyment and use of the land or water beneath, is not an actionable wrong, unless said flight results in actual damage to the land or water, or property thereon or therein, or use of the land or water beneath.
"Section 402. Lawfulness of Flight. — Flight in aircraft over the lands and waters of this Commonwealth is lawful, unless at such low altitude as to interfere with the then existing use to which the land or water, or the space over the land or water, is put by the owner, or unless so conducted as to be dangerous or damaging to persons or property lawfully on the land or water beneath. The landing of an aircraft on the lands or waters of another without his consent is unlawful, except in the case of a forced or emergency landing. For damage caused by a forced or emergency landing, the owner, lessee, and operator of the aircraft shall be liable, as provided in section four hundred three."