Bedminster Township *v.* Vargo Dragway, Inc. et al., Appellants.

Mr. Justice COHEN filed a dissenting opinion, in which Mr. Justice O'BRIEN joined.

Argued January 9, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

.102 

 

*Claire G. Biehn,* with him *Biehn and Thatcher,* for appellants.

*Donald W. VanArtsdalen,* with him *VanArtsdalen, Pratt & Garthright,* for appellee.

OPINION BY MR. JUSTICE JONES, April 23, 1969:

This appeal lies from a decree of the Court of Common Pleas of Bucks County permanently enjoining the operation of a drag strip racing track on the ground that the operation of the track constituted a nuisance in fact.

In March, 1958, Jacob Vargo and Mary Vargo, his wife (Vargos), owned a twenty-seven acre tract of land located in Bedminster Township, Bucks County. At that time the Vargos leased the premises to the Lehigh Valley Timing Association (Timing Association).[1] Under the lease agreement the Vargos were to construct a drag strip racing track on the premises and the Timing Association was to operate the track on a profit-sharing plan.[2]

_____

[1] Timing Association is a corporation which supplies services for drag races such as "running the clocks," starting the cars and races, inspecting the cars, etc.

[2] On June 7, 1958, Bedminster Township adopted an ordinance which declared the operation of drag strip racing in the Township to be a public nuisance and prohibited such racing within the Township limits. The Court of Common Pleas of Bucks County refused to enforce this ordinance on the ground that the Township, absent a legislative grant of power to do so, lacked any authority

The drag strip racing track consists of a 60 foot wide black top level surface approximately 3,200 feet in length, the starting point of which is approximately 100 feet from Elephant Road, a public highway. Also located on the premises nearby are a large parking area owned by the Vargos, a pit area near the starting line, a refreshment stand and a grandstand with ground amplifiers for the playing of music and the announcement of the races and the speeds. The operation of the drag strip began in the Spring of 1960 and continued, with the exception of rainy days, every Sunday from April to November.[3]

On the average Sunday approximately 130 to 140 cars compete in timed races of speed and acceleration with two cars competing at a time. Of these cars, 75% are stock cars equipped with mufflers; some of the remaining cars have no mufflers and some have modified or semi-modified mufflers. Some of the cars are "dragsters," i.e., custom-made for racing, some of which burn methyl alcohol for fuel. Speeds up to 196 miles per hour have been recorded, and some "dragsters" use parachutes to aid in stopping at the end of the track.

The track itself operates for racing only on Sundays beginning about 9:00 a.m. and continuing in operation until 5:00 or 5:30 p.m. with a loud-speaker operating

---

to declare drag racing a nuisance *per se* and to prohibit absolutely such racing. Conceding that drag racing at this particular track— not then opened—might become a nuisance in fact, the court, nevertheless, held that the resolution of such question would have to await the opening of the track and experience with the manner of its operation. Holding that the Township had not met its burden of proving that drag racing at this track at that time had become a nuisance in fact, the court refused to determine the validity of the ordinance under the circumstances. See: *Vargo v. Township of Bedminster*, 10 Bucks Co. L. R. 37 (1959).

[3] In 1964 races were held on approximately twenty-five Sundays.

continually from about 10:30 a.m. until the races end. Practice sessions take place on Saturdays and prior to the start of the races on Sundays. Each race takes about five minutes, and, on the average Sunday, there are usually a minimum of 65 races. Attendance at the races varied from a high of 2547 persons to a low of 625 persons.

The neighborhood in the vicinity of the race track is primarily residential and farming in character with about 62 houses within a one-mile radius of the track. Within the same radius are located a small experimental laboratory, a hotel, a general store, a milk farm and a junk yard. Many of the residences in the general area are used for vacation and weekend purposes only.

In 1961 the Vargos conveyed the tract to Vargo Dragway, Inc., a family corporation in which the Vargos and a daughter owned all the stock. At the time of the institution of the present proceeding the lease between the Vargos and the Timing Association no longer was in effect and the track was operated by Vargo Dragway, Inc., with the assistance of Timing Association personnel hired on a *per diem* basis.

On March 22, 1963, Bedminster Township instituted equity proceedings in the Court of Common Pleas of Bucks County against Vargo Dragway, Inc., the Timing Association and the Vargos, alleging conduct on their part in the operation of the track which constituted a nuisance in fact. Upon answer filed and after hearing, the Court entered a decree nisi enjoining and restraining the defendants from operating the drag strip racing track. Exceptions to this decree nisi were filed and the court en banc of Bucks County dismissed the exceptions and entered a final decree.

Basically, we must determine whether the evidence of record as to the manner in which this track was

operated justified the conclusion of the court below that the operation of the track constituted a nuisance in fact. In arriving at this determination, we bear in mind that the findings of fact of the chancellor, approved by the court en banc, are binding upon this Court if such findings have sufficient evidentiary support in the record and if the court below has not capriciously disbelieved the evidence, committed an error of law or abused its discretion. *Shapiro v. Shapiro*, 424 Pa. 120, 127, 224 A. 2d 164 (1966).

In *Ebur v. Alloy Metal Wire Co.*, 304 Pa. 177, 182, 183, 155 A. 280 (1931), we said: "It has been said that a 'fair test as to whether a business lawful in itself, or a particular use of property, constitutes a nuisance, is the reasonableness or unreasonableness of conducting the business or making the use of the property complained of in the particular locality and in the manner and under the circumstances of the case': 46 C. J. 655. It has also been said: 'Whether the use is reasonable generally depends upon many and varied facts. No hard and fast rule controls the subject. A use that would be reasonable under one set of facts might be unreasonable under another. What is reasonable is sometimes a question of law, and at other times, a question of fact. No one particular fact is conclusive, but the inference is to be drawn from all the facts proved whether the controlling fact exists that the use is unreasonable': 46 C. J. 656." See also: *Reid v. Brodsky*, 397 Pa. 463, 469, 470, 156 A. 2d 334 (1959); *Hannum v. Gruber*, 346 Pa. 417, 31 A. 2d 99 (1943).

Although not entitled to absolute quiet in the enjoyment of property, every person has the right to require a degree of quietude which is consistent with the standard of comfort prevailing in the locality wherein he lives. See: *Firth v. Scherzberg*, 366 Pa. 443, 447, 77 A. 2d 443 (1951); *Crew v. Gallagher*, 358 Pa. 541,

548; 58 A. 2d 179 (1948); *Collins v. Wayne Iron Works*, 227 Pa. 326, 331, 76 A. 24 (1910).

The court below made, inter alia, the following findings of fact: "23. The noise made by the revving up of the vehicles and during the time tests themselves is 'somewhat analogous to an operating chain saw', almost 'jet-like explosions', a 'complete shattering noise', but no matter how described has the effect of limiting the enjoyment of persons not only living in the immediate community, but at least a mile therefrom. 24. The resonance and intensity of the sound is such that it can be heard at a distance of three miles from the drag strip. 25. At homes approximately a mile from the drag strip the noise is such as to make it impossible to carry on a conversation in a normal tone of voice, to prevent the enjoyment of out-of-doors activities, to listen to television programs without turning on the sound at high volume, to cause windows to rattle, and is disturbing to cattle. 26. In the immediate area of the race track the residents are required to close their windows in order that reasonable quiet may prevail in their homes. 27. At the Presbyterian Church of Deep Run, located on Elephant Road approximately two miles from the track, the noise of the cars going to the track disturbs church services. 28. During that time on Sundays when the track is in operation, there is a great increase in traffic on the roads and highways approaching the track [as amended]."

Our examination and reading of this record reveal that these findings of fact are fully supported by the testimony of record. That the noise which emanated from this drag strip racing was an annoyance and inconvenience to persons not only near at hand but some miles from the track is established beyond question.

The court below, within whose province rested the determination of the credibility of witnesses, in its

adjudication, stated: "The site of the drag strip is in an area devoted primarily to residential and farming purposes. Many of the persons living in the immediate area devote their homes to places of retreat, particularly during the summer months, be it for vacations or for weekends, to find respite and surcease from their normal occupations. Others are engaged in farming and in dairying. In this region of peace the defendants from April to November of every year have vexatiously circumscribed the reasonable quiet that one is entitled to enjoy at and around his home, especially on the day of rest. A number of reputable witnesses described in some detail, how, even as far as a mile away from the property, their activities were curtailed. It is true that the defendant produced witnesses and that there was a conflict of testimony as to the intensity of the noise caused by the drag strip operation, the traffic congestion, the effect on farming activities and other factors, but it is worthy of note that all of those who were called by the defendant were demonstrated to have either a business relationship in the past or the present with the defendant or have at least some other connection. Whether or not such witnesses were dissembling or lacked sensitivity to the condition that prevailed, we have accepted the testimony of the plaintiff's witnesses as being more worthy of belief."

In *Kohr v. Weber*, 402 Pa. 63, 166 A. 2d 871 (1960), we had before us a situation in many respects similar to the instant situation. Upholding a decree enjoining the operation of a drag strip racing track in Lancaster County, we held that, in some circumstances, prolonged and excessive noise may constitute a nuisance in fact and that the operation of the track, including the noise and illumination therefrom, constituted a nuisance in fact. Although, unlike *Kohr*, in the case at bar the illumination of the track was not a matter of complaint, the evidence of noise was equally as

strong in its probative value as in *Kohr* and the rationale of *Kohr*, clearly applies to the instant situation.

The principle underlying restraint of the operation of this drag strip racing track has been well enunciated by this Court in *Edmunds v. Duff*, 280 Pa. 355, 364, 124 A. 489 (1924), wherein we said: "No man has a right to take from another the enjoyment of the reasonable and essential comforts of life and, consequently, cannot commit acts on his own premises calculated to interfere with the reasonable enjoyment by others of their homes." See also: *Kohr v. Weber*, supra, at 67.

While the record shows that the Vargos expended a sum in excess of $80,000.00 in connection with the construction of this track and other improvements, they took a "calculated" risk in so doing. Granting that drag strip racing is not a nuisance *per se*, yet the instant record speaks clearly and emphatically to the effect that the operation of this track has become a nuisance in fact. Balancing the equities between the parties, we believe that the rights of those occupying properties adjoining or in the neighborhood of this track are paramount to the rights of the Vargos and that the former must be protected by equity in the enjoyment of their homes.

We believe that the court below in its findings is amply sustained by the record, that it committed no error of law or abuse of discretion and that it did not place its imprimatur of belief on the Township witnesses in a capricious manner.

Decree affirmed. The Vargos to pay costs.

---

DISSENTING OPINION BY MR. JUSTICE COHEN:

Since in this action it has been determined that drag racing is not a nuisance *per se*, I consider the

decree which we are now enforcing too broad in that it permanently "enjoined and restrained [defendants] from operating the drag strip." The restraining decree should have been directed against the particular aspects of the operation which in fact are nuisances rather than restricting the entire operation.

Mr. Justice O'BRIEN joins in this dissent.