Steward S. Groff, Appellant, *v.* The Borough of
Sellersville, Appellee.

Argued October 2, 1973, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Randolph A. Scott,* with him *Smith & Wilson,* for appellant.

*Richard P. McBride,* with him *Samuel G. Moyer* and *Power, Bowen & Valimont,* for appellee.

OPINION BY JUDGE BLATT, January 28, 1974:

Steward S. Groff is the owner of a large two-story frame building which is located in the Borough of Sellersville (Borough). The building was erected in 1910 for use as a cigar box factory, but is currently used by Groff as a warehouse to store second-hand merchandise which is used in Groff's business. The building is located in a residential neighborhood, with the nearest structure approximately twenty feet away, and is supplied with neither electricity nor heat.

By resolution on January 11, 1971, the Borough Council of Sellersville, pursuant to Borough Ordinance No. 300, declared that Groff's building was in a "dangerous condition" and ordered that it be removed. When Groff failed to comply with this resolution, the Borough instituted an action in equity in the Court of Common

Pleas of Bucks County, seeking to have the building declared a public nuisance and to have the nuisance abated by ordering the building's removal.

Two hearings were held, and, at the close of the second hearing on June 30, 1971, the chancellor orally ordered[1] the building to be razed and removed unless certain repairs and improvements were made to it within ninety days. On October 22, 1971, when the parties again appeared before the chancellor, it was conceded that the order of June 30, 1971 had not been carried out. Subsequently, by stipulation, both parties requested that the chancellor file an adjudication and decree nisi as required by Pa. R.C.P. No. 1517, and this was done by the chancellor on June 30, 1972. The decree nisi directed the demolition and removal of Groff's building within ten days of the date of entry of a final decree. Exceptions were filed, but the court en banc affirmed the decree nisi and entered a final decree to the same effect. Groff thereafter brought an appeal to this Court.

Our scope of review in equity matters is limited. The findings of fact of the chancellor will be reversed only where there has been manifest or clear error or a clear abuse of discretion. The chancellor's decision will stand if there exists sufficient evidence to justify the findings and logically sound, reasonable inferences and conclusions derived therefrom. Even a preponderance of testimony against the findings will be insufficient if there is testimony which, is believed, will warrant them. *Ross v. Philadelphia Federation of Teachers,* 8 Pa. Commonwealth Ct. 204, 301 A. 2d 405 (1973).

The essential questions before us, therefore, are (1) whether or not Groff's building constitutes a pub-

---

[1] The attorneys for the parties apparently agreed at the hearing that the chancellor should issue a final order at that time rather than follow the dictates of Pa. R.C.P. Nos. 1516-1519.

lic nuisance and, if it does, (2) whether or not removal, as ordered by the lower court, is proper.

A "nuisance" is " 'such a use of property or such a course of conduct as, irrespective of actual trespass against others or of malicious or actual criminal intent, transgresses the just restrictions upon use or conduct which the proximity of other persons or property in civilized communities imposes upon what would otherwise be rightful freedom. In legal phraseology, the term "nuisance" is applied to that class of wrongs that arise from the unreasonable, unwarrantable, or unlawful use by a person of his own property, real or personal, or from his own improper, indecent, or unlawful personal conduct, working on obstruction or injury to a right of another, or of the public, and producing such material annoyance, inconvenience, discomfort or hurt that the law will presume a consequent damage. . . .' " *Kramer v. Pittsburgh Coal Company*, 341 Pa. 379, 380-381, 19 A. 2d 362, 363 (1941). "A public nuisance is an inconvenience or troublesome offense that annoys the whole community in general, and not merely some particular person, and produces no greater injury to one person than to another—acts that are against the well-being of the particular community—and is not dependent upon covenants. The difference between a public and a private nuisance does not depend upon the nature of the thing done but upon the question whether it affects the general public or merely some private individual or individuals. . . ." *Phillips v. Donaldson*, 269 Pa. 244, 246, 112 A. 236, 238 (1920).

Ordinarily, in actions to enjoin or abate public nuisances, equity has jurisdiction. *Bedminster Township v. Vargo Dragway, Inc.*, 434 Pa. 100, 253 A. 2d 659 (1969); *Commonwealth v. Soboleski*, 303 Pa. 53, 153 A. 898 (1931). An exception to this general rule, however, is a situation where a statutory remedy is avail-

able. *Commonwealth v. Glen Alden Corporation*, 418 Pa. 57, 210 A. 2d 256 (1965). And here, the Borough has a statutory remedy available to abate public nuisances,[2] which, rather than preempting equity's jurisdiction, specifically recognizes such jurisdiction. "To prohibit and remove any nuisance, including but not limited to accumulations of garbage and rubbish and the storage of abandoned or junked automobiles and to prohibit and remove any dangerous structure on public or private grounds, or to require the removal of any such nuisance or dangerous structure by the owner or occupied of such grounds, in default of which the borough may cause the same to be done, and collect the cost thereof, together with a penalty of ten percent of such cost, in the manner provided by law for the collection of municipal claims, or by action of assumpsit, *or may seek relief by bill in equity."* (Emphasis added.) It has been said of this section: "Thus, the act vests the borough with authority to remove or require the removal of a nuisance or dangerous structure. This is an awesome authority, since it empowers a governmental body to destroy or cause the destruction of private property without compensation. Hence, the exercise of such a power should be confined to cases of clear, present and continuing danger or nuisance. Even if there is a proper case to invoke the act, the power of the borough is limited to action which is reasonably deemed necessary to put an end to the nuisance or danger." *Hatboro Borough v. Ivycrest Guernsey Dairies, Inc.,* 79 Montg. 150, 153 (1961).

In its determination of whether or not Groff's building did in fact constitute a public nuisance, the lower court found: "[T]he building, which is located

---

[2] Section 1202(5) of The Borough Code, Act of Feb. 1, 1966, P.L. (1965) 1656, 53 P.S. §46202(5).

at 30 Noble Street, Sellersville, to be in a dilapidated, deteriorating and advanced state of disrepair; further, that it is an unoccupied two-story frame structure built in 1910 to be a cigar box factory and presently used for the storage of second hand furniture, refrigerators, freezers, tires, and other stock in trade of Mr. Groff's business; that its exterior dimensions are sixty feet by one hundred feet; that the exterior-interior walls consist of single boards sheathed over open studding; that it is without heat or electricity; that the walls, many window frames and sashes and the floor boards are broken or rotted and beyond repair and the roof is leaking; that large quantities of old cardboard boxes, trash, lumber, paper, brush, barrels, and other combustible material piled inside create a serious fire hazard, and there is no fire extinguishing equipment; that repair is also needed to the foundation and to floor joists, beams and posts before the building can be structurally sound; that it is located in a residential neighborhood, the nearest dwelling being at a distance of only eighteen to twenty feet; that it is left open and unattended and is not secure from the easy intrusion of children and that over the years children have frequented it." (Footnote omitted.) We must hold that a review of the record discloses sufficient evidence to support these findings. We must also hold that the lower court did not err in determining that a building in such condition as it found Groff's to be constitutes a public nuisance in fact, which must be abated. *See Lower Salford Township v. Colgan,* 84 Montg. 51 (1963); *Petition of Kriebel,* 45 Berks 79 (1952).

A problem arises in this case as to the appropriate relief needed in order to abate this nuisance. The final order of the court below required removal of the building. The court also found as a fact, however, that the building was not beyond repair, and there is clearly

sufficient evidence in the record to support a finding that the building is repairable. In fact, in its oral order of June 30, 1971, the lower court actually afforded Groff ninety days within which to effect such repairs and improvements to the building that it would no longer constitute a public nuisance. The lower court apparently determined that, because Groff had not complied with this order, the only reasonable remedy was to order the building demolished.

Groff argues that he did not comply with the order to repair his building because he wished to appeal from the finding that his building constituted a public nuisance, and that he could not appeal from the June 30, 1971 order because it did not constitute a final order. We must agree that the June 30, 1971 order did not meet the requirements of Pa. R.C.P. Nos. 1516-1519 (even if the parties had agreed to that procedure), and an appeal therefrom would either have been quashed or remanded to permit the filing of exceptions. *See Community Sports, Inc. v. Oakland Oaks,* 429 Pa. 412, 240 A. 2d 491 (1968) ; *Philadelphia v. Protect-A-Life Corporation,* 3 Pa. Commonwealth Ct. 469, 284 A. 2d 158 (1971). Groff's failure to repair his premises following the June 30, 1971 order, therefore, does not conclusively establish that he cannot or will not do so, thus necessitating immediate removal of the building.

When it is determined that a public nuisance in fact exists, the courts should not devise a remedy harsher than the minimum necessary to properly abate such nuisance. *Cf. Barclay v. Commonwealth,* 25 Pa. 503 (1855) ; *Hatboro Borough v. Ivycrest, supra.* The lower court here found that Groff's building was repairable, and it should not have subsequently ordered the building demolished without making a further determination that Groff could not or would not abate the nuisance through repairs.

We, therefore, affirm the lower court's finding that Groff's building constitutes a public nuisance, but we vacate the lower court's order and remand the record to that court for the purpose of devising a more appropriate remedy.

———

CONCURRING AND DISSENTING OPINION BY JUDGE ROGERS:

I concur in the majority's conclusion that the record supports the lower court's finding that the appellant's building is a public nuisance. I respectfully dissent from the majority's action remanding the matter for an order different from that made by the court below.

During the first series of hearings below the appellant conceded that his building required repairs and testified that he was willing to make such. He even called a witness to testify as to what was needed to restore the building to a reasonably safe condition. The trial judge then suggested that he should make an order affording the appellant ninety (90) days to undertake such work, suggesting from the bench that this time limitation might be extended upon request. The parties agreed to this disposition of the case. The trial judge then dictated an order from the bench and the appellant and his counsel expressly assented to its terms. This occurred on May 3, 1971.

Rather than do any work on the building or ask for an extension of time, the appellant filed an appeal to the Commonwealth Court. This was later withdrawn.

Further hearings were conducted by the court below. An adjudication nisi was entered on June 30, 1972 requiring the appellant to remove the building within ten (10) days. After exceptions filed, the decree nisi was entered as a final decree on January 19, 1973, one year and eight months after the court's first order entered by agreement of the parties.

In my opinion it was no abuse of the court's discretion in June 1972 and January 1973 to order the appellant to remove a building which he had agreed, but failed, to repair in May of 1971. I further note that the appellant's brief on this appeal makes no mention whatsoever of a desire or intention to repair his building. If he is to be given a further opportunity to do so, it should come not from us but from the court below which has the power to modify its decree if equity requires it.

Judges WILKINSON and MENCER join in this Concurring and Dissenting Opinion.