MURLE B. JONES, MARY H. JONES, GEORGE W. JONES, EDRIE B.
JONES, THOMAS G. GINN, VIRGINIA P. GINN, MR. & MRS. ROGER
D. GINN, W. JACK WINGATE, PEARL D. WINGATE, L. P. WOF-
FORD, GWENDOLYN B. WOFFORD, MR. & MRS. MARION O. CAU-
THEN, MR. & MRS. J. DOUGLAS HOWELL, MR. & MRS. GLENN L.
SCHRUM, H. L. HARGETT, JEAN R. HARGETT, MRS. MARTHA A.
HUNT, DREW G. MIDDLETON, DOROTHY B. MIDDLETON, HENRY
BAUCOM, JR., GLENDA C. BAUCOM, JERRY W. YORK, SUDIE J.
YORK, MR. & MRS. W. T. BOWMAN, INDIVIDUALLY AND ON BEHALF
OF ALL OTHER RESIDENTS OF THE DISTRICTS ZONED "RESIDENTIAL" AND AD-
JOINING AND LYING BETWEEN NEW DIXIE ROAD, AIRPORT DRIVE, MORRIS
FIELD DRIVE AND TAGGART CREEK, IN MECKLENBURG COUNTY, WHO ARE
SIMILARLY SITUATED v. QUEEN CITY SPEEDWAYS, INC.

No. 56

(Filed 30 January 1970)

**1. Nuisance § 1— operation of motor vehicle speedway**

While the operation of a motor vehicle speedway is a lawful enterprise
and is therefore not a nuisance *per se*, it may, under varying circum-
stances, be a private nuisance *per accidens*.

**2. Nuisance §§ 2, 7— operation of racetrack — violation of anti-noise
ordinance**

In this action to enjoin operation of a motor vehicle racetrack as a
nuisance, the jury's verdict and court's findings of fact clearly show that
defendant, by the operation of its racetrack, violated the terms of a
municipal ordinance prohibiting in residential districts regularly recurring
noises above a certain level from activities in adjoining business or in-
dustrial districts.

**3. Nuisance § 1— violation of municipal ordinance**

The mere violation of a municipal ordinance does not constitute a nuis-
ance, but if the actual thing is a nuisance or in the nature thereof and it
is done or maintained in violation of a municipal ordinance, it may con-
stitute a nuisance against which relief may be obtained by one who suffers
special and peculiar injury of an irreparable nature therefrom.

**4. Nuisance §§ 2, 7— operation of motor vehicle racetrack — abate-
ment of nuisance**

In this action to enjoin the operation of a motor vehicle racetrack as
a nuisance, wherein plaintiffs alleged and the jury by its verdict found
that the noise of the racing vehicles on defendant's track was so loud as
to cause plaintiffs discomfort and annoyance, to cause them to lose sleep
at night, and to impair use and enjoyment of their homes, and that
lights and dust from the racetrack, coupled with the noise, caused
plaintiffs' property to depreciate in value and made their homes virtually
uninhabitable while the races were in progress, the trial court erred in
failing to abate the nuisance as found by the jury and in permitting de-
fendant to continue operation of the racetrack under regulations imposed
by the court.

BOBBITT, C.J., concurs in result.

APPEAL by plaintiffs from *Ervin, J.*, and jury. February 17, 1969 Schedule C Civil Session of MECKLENBURG. Upon plaintiffs' petition for *certiorari,* this case was certified for review before determination by the Court of Appeals.

Plaintiffs instituted this action on 10 October 1968 to enjoin the operation of a motor vehicle race track owned and operated by defendant. The complaint alleges: The track is located in Mecklenburg County on the south side of New Dixie Road (also called West Boulevard) immediately across from the residential area where plaintiffs live. In August, 1968, defendant began conducting automobile and motorcycle races on its track at the rate of about one per week. Usually the races were run after dark and lasted late into the night. The races were a nuisance to plaintiffs in that the dust and noise created by the racing vehicles and the glare of the lights from the track caused them discomfort and annoyance, prevented them from sleeping, and rendered their homes virtually uninhabitable while the races were in progress. Plaintiffs also allege that the noise from the races was a violation of Section 23-30 of the Code of the City of Charlotte captioned "Noises."

Defendant denies that the operation of the race track created a nuisance and that the noise of the races was a violation of Section 23-30 of the Code of the City of Charlotte.

At the trial the jury answered the issue in favor of the plaintiffs, and the court signed the following judgment:

"THIS ACTION coming on to be heard and being heard by the Honorable Sam J. Ervin, III, Judge Presiding, and a jury at the February 17, 1969, Schedule C Civil Session of the Superior Court of Mecklenburg County, North Carolina, and the issue having been submitted to the jury and answered as follows:

"Did the defendant so locate, use and operate its race track so as to constitute a nuisance?

ANSWER: Yes.

"It was thereupon stipulated by counsel for the parties that judgment might be signed out of term and after the Court and the parties had had an opportunity to give additional consideration to the content and the form of the judgment necessary to abate the nuisance. It was further stipulated that any motions and appeal entries available upon the coming in of the verdict and upon the signing of the judgment might be made to the Court out of term.

"After having given consideration to the admissions and stipulations, evidence introduced at the trial, the jury verdict, the authorities submitted to the Court and after considering the arguments of counsel, the Court concludes that the plaintiffs are entitled to an injunction restraining the continued use and operation of the defendant's property in such a way as to injure the plaintiffs.

"The Court finds the following facts from the admissions, the stipulations and the evidence presented at the trial and at the hearing held on March 18, 1969, subsequent to the trial:

"1. That the plaintiffs are residents of apartments owned by Stonewall Jackson Housing Association, Inc., and Gardner-Webb Junior College, Inc., which are situated adjacent to each other on the northerly side of West Boulevard in Mecklenburg County, and which were constructed prior to the construction of defendant's race track.

"2. That the defendant owns and has been operating a dirt surface motor vehicle race track immediately across West Boulevard from the apartments in which the plaintiffs reside, and about 300 feet from some of said apartments.

"3. That approximately 300 people, approximately 80 of whom are of school age or under, live in the apartments of the Stonewall Jackson Housing Association, Inc., and more than 500 people live in the apartments of Stonewall Jackson Housing Association, Inc., and Gardner-Webb College, Inc.

"4. That plaintiffs' residences and defendant's race track lie within one (1) mile of the City limits of the City of Charlotte, North Carolina, and are within the perimeter zoning area of the City of Charlotte.

"5. That the plaintiffs' homes lie within a district zoned 'residential' by a duly adopted ordinance of the City of Charlotte. The defendant's race track lies in an adjacent district zoned 'light industrial' by a duly adopted ordinance of the City of Charlotte.

"6. That the defendant, upon completion of the construction of its race track and beginning about the middle of August, 1968, and continuing for a period of approximately 2½ months until further racing was prevented by winter weather, conducted automobile races on its race track at approximately weekly intervals, sometimes on Thursday nights, sometimes on Friday nights, and on one occasion on Sunday afternoon.

"7. That on the nightly occasions the movement of automobiles on the race track began at 7 p.m. and usually continued until after 11 p.m. and frequently until after midnight, and on one occasion until after 1:00 a.m.

"8. That roughly half of that interval of time would be taken up with actual racing of automobiles so that there would be periods of loud racing noise interspersed by periods of relative quiet, frequently broken by loud speaker announcements at the race track.

"9. That as many as 30 automobiles sometimes race at the same time, all without mufflers and at speeds sometimes reaching 90 miles per hour.

"10. That the racing automobiles on defendant's race track produce a very loud, rough and irritating noise, which because of the number of vehicles, the absence of mufflers and the high speeds at which the vehicles are operated greatly exceed the noise made by ordinary automobiles.

"11. That the noise of the races at the plaintiffs' places of residence is greatly in excess of the level of noise which is customarily heard in residential districts and which is made by the uses which are prevailing in residential districts.

"12. That the more cars that race the more noise that is made, but only about 7 or 10 automobiles racing without mufflers on defendant's race track make enough disagreeable noise to substantially interfere with plaintiffs in carrying on normal conversations and other normal pursuits in their homes and in yards and in attempting to sleep and to materially bother and annoy the plaintiffs.

"13. That noise is a part of the attraction and automobile racing would have no crowd appeal without the noise, according to the testimony of defendant's own witnesses.

"14. That the defendant's race track has been so operated that regularly recurring noises, as detected by the human sense of hearing, without instruments, at the adjoining residential district boundary lines within which plaintiffs' homes are located did exceed the normal noise level generated by uses prevailing in residential districts to the injury and detriment of the plaintiffs.

"15. That the racing vehicles on defendant's race track, operating on a dirt surface and at high speeds for long periods

of time, have produced great quantities of dust, some of which has been taken in the air to the vicinity of plaintiffs' homes where it has dirtied the interior of the plaintiffs' homes, as well as plaintiffs' automobiles and other property on the outside of plaintiffs' homes.

"16.   That the efforts which the defendant has made to control the dust have not been effective, the evidence indicating that the dust was the worst of all at the last race which was conducted in 1968 and that some dust is unavoidable, especially after a race has been in progress for some time.

"17.   That the dust created by the motor vehicles racing on the defendant's race track cause substantial and material annoyance, disturbance and physical injury to the plaintiffs.

"18.   That the defendant's race track as presently constructed is illuminated by high powered lights located on 40-foot high poles, some of which shine directly toward the residences of the plaintiffs and constitute an annoyance, an inconvenience and detriment to the plaintiffs.

"19.   That the evidence indicates that these lights were incorrectly installed by the contractor and that some action could be taken with respect to their location and construction to avoid or minimize the damage done to the plaintiffs by these lights.

"20.   That shortly after defendant announced its plans for the construction of its automobile race track facility, the plaintiffs publicly stated that they would do everything necessary to stop construction of the track; that plaintiffs did not institute suit against defendant at that time; that defendant voluntarily delayed construction for a period of time of approximately one (1) month for purposes of trying to find another comparable site; that no such site was located and since plaintiffs had not instituted suit, defendant resumed construction of its race track facility from November, 1967, and on a daily basis through mid-August, 1968, making substantial and valuable improvements on the land; that plaintiffs observed and knew that defendant was continuing construction of its race track facility and making substantial and valuable improvements thereon and that suit was not instituted until after defendant had completed its said automobile race track facility and had begun conducting automobile races thereon.

"21.   That the racing events consisted of six heat races last-

ing from seven to ten minutes each and three main events lasting fifteen minutes each and that in between each heat race and main event race, there was a period of relative quiet of between ten and fifteen minutes; that some races lasted longer than stated because of interruption by wrecks.

"22. That some eight to twelve automobiles participated in each heat and that usually no more than twenty-four automobiles participated in each main event and that such cars ran without mufflers and at speeds averaging between 45 and 60 miles per hour.

"23. That defendant offered evidence indicating that any light glare suffered by plaintiffs from its lighting system could be completely eliminated by the relocation of the lights complained of and that the initial placement of such lights is one of the bases for a suit against the defendant's contractor.

"24. That defendant leased its race track for the construction of two motorcycle races and one 'demolition derby,' in addition to the nine (9) automobile races conducted by defendant on said track; that one motorcycle race was conducted on Saturday night and the other on a Sunday afternoon; that the noise created by the racing motorcycles was not as loud as that created by the racing automobiles, as described by plaintiffs' testimony; and that the 'demolition derby' event created loud banging noises.

"25. That the apartments in which plaintiffs reside are located about one-fourth (¼) of a mile from the nearest point of the North-South runway of the Charlotte Douglas Municipal Airport; that plaintiffs often heard jet aircraft taking off and landing on a daily basis the year round.

"26. That the noise made by the automobile races was measured at five points on the property of Stonewall Jackson Housing Association, Inc., by plaintiffs' expert electrical engineer on November 3, 1968; that the maximum decibel reading taken during the race was 98 decibels and that it was obtained outside and that the average decibel reading obtained from inside said apartments during a race was 80-87 decibels and that either the apartment windows or doors were open when such decibel readings were taken.

"27. That plaintiffs' expert electrical engineer testified that ninety-eight (98) decibels of noise is equivalent in loudness to the inside of a weave room of a textile mill during its operation;

and that the decibel level inside an airplane ranges from 80-90 decibels and that conversation can be carried on therein.

"From the foregoing findings of fact, the Court makes the following conclusions of law:

"1.  That the defendant's use and operation of its automobile race track facility can be so regulated and supervised so as not to constitute a nuisance as to the plaintiffs.

"2.  That the Court in its equitable jurisdiction can prescribe regulation and supervision for the future operation of the track so as to abate the nuisance to the plaintiffs as found by the verdict of the jury.

"NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the defendant, its officers, agents and servants, and all persons in active concert or participation with them, be and they are hereby absolutely enjoined and restrained from using the property of the defendant as above described as a motor vehicle race track, except as hereinafter regulated and restricted:

"(1)  The surface of the race track shall first be completely paved by the use of asphalt or other hard, solid material used in the paving of race tracks; that all entrances and exits to the track shall first be paved by the use of tar and gravel by the process of 'black-topping' as such term is used in the highway construction business in North Carolina; any dirt parking area utilized in connection with the race track shall be oiled or wet down with water prior to each use that is made of the parking areas as such areas need not be paved so long as there is not much movement in them except at the beginning and end of the race.

"(2)  That no more than one race per week, such week being Monday through Sunday, shall be conducted on defendant's track and that these races may be conducted only between April 15 and October 15 in each year; that no more than eight of such races may be conducted at night in each calendar year; that no more than two night races may be held in any calendar month; that all night races must be over or ended not later than 11 p.m. o'clock at the latest, and all races will be stopped promptly at such hour whether finished or not; there will be no night races conducted on defendant's track except on Friday and Saturday nights; that day races can be held only on Saturday, Sunday or legal holidays as such legal holidays are de-

clared by the General Statutes of North Carolina; day races must be over or ended no later than 7 p.m. o'clock; that motorcycle races may be run in lieu of a weekly automobile race, not in addition to such automobile race; defendant is hereby enjoined from conducting any demolition derby on defendant's track; defendant is enjoined from operating more than twenty-four cars or motor vehicles in any given heat or race at the same time.

"(3) The lights around defendant's track must be relocated and directed downward toward the track in such fashion as to eliminate glare and reflection into the area of plaintiffs' residences, and if it is necessary to prevent glare and reflection into the area of the Stonewall Jackson Homes, such lights must be shielded or covered with some type of cover that will keep light from shining in that direction; all such lights must be turned off no later than 11:30 p.m. o'clock.

"(4) The Court shall retain jurisdiction of this matter for all purposes and the undersigned Judge shall retain jurisdiction of it at least until the first day of July, 1969.

"(5) Another hearing shall be held in this matter on the 5th day of June, 1969, at 2 p.m. o'clock, at which time all parties will have the right to come into Court and offer any testimony as to what has transpired in the interim under this Order, and that at that time the Court may, after hearing evidence, modify this Order in any respect.

"(6) That the defendant is permitted to use its property for motor vehicle races only so long as said races are conducted in a manner as to not constitute a nuisance as to plaintiffs.

"(7) That the costs of this action be taxed against defendant.

> [Paragraphs 8 and 9 concerning taxing of
> costs and expert witness fee are omitted.]

"This decree is ordered to be entered nunc pro tunc as of the February 17, 1969, Schedule C Civil Session of the Superior Court of Mecklenburg County, North Carolina, this 25th day of April, 1969."

As provided in the foregoing judgment, a hearing was held on 5 June 1969. When it appeared that no races had been held on defendant's race track and none of the improvements mentioned in said judgment had been made, Judge Ervin ordered that the regulations not be modified, and the plaintiffs appealed. They assign as

error: (1) The trial judge's failure to enjoin the defendant's operation of the race track; (2) the adjudication that the race track could be regulated and supervised so as not to constitute a nuisance as to the plaintiffs; and (3) the holding of the court that in its equitable jurisdiction it could prescribe regulations and supervision for the future operation of the track so as to abate the nuisance to the plaintiffs.

*Grier, Parker, Poe, Thompson, Bernstein, Gage and Preston by Gaston H. Gage and Joseph W. Grier, Jr., for plaintiff appellants.*

*Berry and Bledsoe by Louis A. Bledsoe, Jr., and C. Ralph Kinsey, Jr., for defendant appellee.*

MOORE, J:

The question presented is: Did the trial court err in not abating the nuisance as found by the jury and by permitting the defendant to continue operation under the regulations imposed by the judgment?

[1] The operation of a motor vehicle speedway is a lawful enterprise, and therefore its operation is not a nuisance *per se*. However, under varying circumstances, the operation of a speedway could be a private nuisance *per accidens*. *Hooks v. Speedways, Inc.*, 263 N.C. 686, 140 S.E. 2d 387. In *Hooks* the defendant proposed to build a motor vehicle race track some 2500 feet from a rural church. The church sought to permanently enjoin an alleged prospective private nuisance. In affirming an order continuing a temporary injunction against the construction of the track until the trial on the merits, the Court said:

> "Where a nuisance is private and arises out of the manner of operating a legitimate business or undertaking, a court of equity will, of course, do no more than point to the nuisance and decree adoption of methods calculated to eliminate the injurious features. *Rohan v. Detroit Racing Asso., supra* [314 Mich. 326, 22 N.W. 2d 433, 166 A.L.R. 1246 (1946)]. In other words, a court of equity will not outlaw the entire operation if a decree restricting the time or method of operation will eliminate the injury. *But if regulation will not abate the nuisance, the entire operation will be enjoined.*

> "Mere noise may be so great at certain times and under certain circumstances as to amount to an actionable nuisance and entitle the party subjected to it to an injunction. *Kohr v.*

*Weber, supra* [402 Pa. 63, 166 A. 2d 871 (1960)]. To amount to a nuisance, noise must be unreasonable in degree. Where noise accompanies an otherwise lawful pursuit, whether such noise is a nuisance depends on the locality, the degree of intensity and disagreeableness of the sounds, their times and frequency, and their effect, not on peculiar and unusual individuals but on ordinary, normal and reasonable persons of the locality." (Emphasis added.)

**[2, 3]** The following ordinance of the city of Charlotte applies to the perimeter zoning area within which plaintiffs' homes and defendant's race track are located:

"Section 23-30. Noises. Every use, activity and process shall be so operated that regularly recurring noises are not disturbing or unreasonably loud, and do not cause injury, detriment or nuisance to any person. Every use, activity and process in business and industrial districts shall be so operated that regularly recurring noises, as detected by the human sense of hearing, without instruments, at the adjoining residential or office district boundary lines, shall not exceed the normal noise level generated by uses permitted in residential and office districts. (Ord. No. 62, 1-29-62)."

Although the trial court did not specifically refer to this ordinance or find that defendant by the operation of its race track had violated its terms, the jury's verdict and the court's findings of fact Nos. 11 and 14 clearly show a violation. The mere violation of a municipal ordinance does not constitute a nuisance, but if the actual thing is a nuisance or in the nature thereof and it is done or maintained in violation of a municipal ordinance, it may constitute such nuisance as against which relief may be obtained by one who suffers special and peculiar injury of an irreparable nature therefrom. 66 C.J.S. Nuisances § 78.

In *Barrier v. Troutman,* 231 N.C. 47, 55 S.E. 2d 923, the jury found that an airport was so located and used that planes operating to and from it constituted a nuisance to the plaintiff. The Court held:

"In the case at bar the verdict of the jury established the fact that the airport of the defendants was so located and used that planes operating to and from it constituted a nuisance 'as alleged in the complaint.' This finding was without exception by the defendants. The complaint alleged a private nuisance as distinguished from a public nuisance, that is, that the described injuries, discomforts, and annoyances resulted from violation of

plaintiff's private rights rather than those common to the public generally. . . . Hence, we think the plaintiff was entitled to the remedy by injunction, restraining the continued use and operation of the airport in such a way as to injure the plaintiff in the manner alleged in his complaint."

Recent cases from other jurisdictions deal with situations similar to the case at bar. In the Pennsylvania case of *Kohr v. Weber,* 402 Pa. 63, 166 A. 2d 871 (1960), the Court found:

"[The defendant] owns in Manor Township, Lancaster County, a piece of land equipped with facilities for an airport and a race track, the latter consisting of a macadam strip approximately three thousand feet long and wide enough to accommodate two racing automobiles or four motorcycles. The track is known as a 'drag strip.' On Saturday nights, as well as on Fridays when a holiday falls on either Friday or Saturday, races are run on the 'drag strip' from 6 p.m. until midnight. Occasionally the races are in operation as late as 2 a.m. Sunday. The loud noises, glaring illumination, and swirling dust clouds which inevitably accompany an operation of this character caused such annoyance and discomfort to residents of the area that sixteen of them applied to the Court of Common Pleas of Lancaster County for an injunction against [defendant] and the operator of the race track. . . ."

In *Kohr* the Court also found that there were some two hundred dwellings located within a radius of one-half mile of the race track. In affirming the injunction against the racing operation,the Pennsylvania Court said:

"The appellants argue that if the Court was disposed to impose some restraint on the defendants, the injunction should apply only to a diminution of the noise and illumination. But noise and artificial light are as integral parts of night-dragracing as smoke, sound and color make up the phenomenon of fireworks. For spectators to view the races after sundown, artificial illumination is indispensable and to think of a silent automobile or motorcycle race is to conjure up what is mechanically impossible. Thus, the only remedy possible under the circumstances was to restrain the drag racing completely."

To like effect, in *Town of Bedminster v. Vargo Dragway, Inc.,* 434 Pa. 100, 253 A. 2d 659 (1969), the Pennsylvania Court permanently enjoined the operation of a drag strip which was located in an area primarily residential and farming in character with about

62 houses within one mile of the track. With reference to the equities involved, the Court made the following statement:

> "While the record shows that the [defendants] expended a sum in excess of $80,000.00 in connection with the construction of this track and other improvements, they took a 'calculated' risk in so doing. Granting that drag strip racing is not a nuisance *per se,* yet the instant record speaks clearly and emphatically to the effect that the operation of this track has become a nuisance in fact. Balancing the equities between the parties, we believe that the rights of those occupying properties adjoining or in the neighborhood of this track are paramount to the rights of the [defendants], and that the former must be protected by equity in the enjoyment of their homes."

In the instant case, in setting out the requirements and conditions upon which he was willing to authorize the defendant to operate its track, the learned trial judge was undoubtedly seeking to "balance the equities" between the parties and to follow the dictum stated in *Hooks v. Speedways, Inc., supra:* "In other words, a court of equity will not outlaw the entire operation if a decree restricting the time or method of operation will eliminate the injury." This statement must be restricted to the facts of that case. In *Hooks* a rural church was situated some 2500 feet from the proposed track and an order which would have prevented races while church services were being held might well have provided all the protection needed. The Court did not envision the quoted statement as authorizing the Superior Court either to blueprint or supervise the operation of a race track, particularly where, as in the case at bar, the verdict of the jury had established the fact that the defendant had located, used, and operated its race track so as to constitute a nuisance.

There is no assurance that these conditions can or will be corrected by the regulations imposed in the judgment of the trial court. For instance, noise is one of the most objectionable features of a motor vehicle race. Judge Ervin sought to control this only by changing the hours and reducing the number of races. Yet the judgment entered would permit a total of 25 races each season — more than double the number found by the jury to be a nuisance in 1968.

[4] Since issues arise on the pleadings when supported by the evidence, we interpret the jury's answer to the issue to mean that the nuisance found was as alleged in the complaint. The plaintiffs alleged and the jury by its verdict found that the noise of the racing vehicles on defendant's track was so loud as to cause the plain-

tiffs discomfort and annoyance, to cause them to lose sleep at night, and to impair the plaintiffs' use and enjoyment of their homes, and that the lights and dust from the race track, coupled with the noise, caused the plaintiffs' property to depreciate in value and made plaintiffs' homes virtually uninhabitable while the races are in progress.

The jury having found that defendant was operating its race track so as to constitute a nuisance, we hold that plaintiffs were entitled to a judgment restraining its operation in the manner which caused the nuisance. This case is, therefore, remanded to the Superior Court of Mecklenburg County for entry of a judgment on the verdict restraining the nuisance alleged in the complaint.

Error and remanded.

BOBBITT, C.J., concurs in result.