IN THE COURT OF APPEALS OF NORTH CAROLINA

 2022-NCCOA-201

 No. COA21-98

 Filed 5 April 2022

 Granville County, No. 19-CVS-229

 ANTONIO LAMAR BRYAN and wife UVETIA BRYAN, Plaintiffs,

 v.

 WILLIAM KITTINGER and wife HANNAH SUH KITTINGER, Defendants.

 Appeal by Defendants from judgment entered 9 December 2019 by Judge Alma

 Hinton in Granville County Superior Court. Heard in the Court of Appeals 20

 October 2021.

 Wilkinson & Carpenter, P.A., by A. Chance Wilkinson, for the Plaintiffs-
 Appellees.

 Adams and Reese LLP, by Lydney R. Z. Bryant, for the Defendants-Appellants.

 DILLON, Judge.

¶1 “The issue is, what is chicken?” This is the opening line in Frigaliment

 Importing Co. v. B. N. S. Int’l Sales Corp., 190 F. Supp. 116, 117 (S.D.N.Y 1960), a

 case studied by most law students when learning about principles of interpreting

 contract provisions. This present appeal involves the fate of four chickens and

 whether their presence in a residential planned community violates the private

 restrictive covenants governing that community.
 BRYAN V. KITTINGER

 2022-NCCOA-201

 Opinion of the Court

 I. Background

¶2 Plaintiffs and Defendants are next-door neighbors in the Sleepy Hollow

 Subdivision, a planned community established in 1998.

¶3 In 2016, Defendants moved into a house in Sleepy Hollow. They keep four hens

 (female chickens) in a coop in their backyard.

¶4 In 2018, Plaintiffs commenced this action to enjoin Defendants from keeping

 the hens, claiming that their presence violated Sleepy Hollow’s restrictive covenants

 prohibiting the keeping of “poultry” and that their presence otherwise constituted a

 nuisance. Defendants answered, admitting to keeping the chickens but denying that

 their presence violated the covenants or constituted a nuisance.

¶5 In late 2019, the trial court granted Plaintiffs’ summary judgment motion,

 concluding that the chickens violated the covenants as a matter of law, and enjoined

 Defendants from keeping them at their home.

¶6 However, in early 2020, Sleepy Hollow recorded an amendment to their

 covenants that allows each homeowner to keep up to five (5) hens for non-commercial

 use. Based on this new covenant, Defendants sought relief from the injunction. The

 trial court concluded that the 2020 covenant was not valid and denied the motion.

¶7 Defendants timely appealed.

 II. Analysis

¶8 The trial court’s order granting summary judgment was based on its
 BRYAN V. KITTINGER

 2022-NCCOA-201

 Opinion of the Court

 interpretation that owning chickens violated Sleepy Hollow’s covenants that were

 recorded in 1998 (hereinafter the “1998 covenant”). The trial court made no

 determination as to whether their presence otherwise constituted a nuisance.

 Accordingly, the nuisance claim is not before us.

¶9 On appeal, Defendants argue that the trial court erred in granting Defendants’

 motion for summary judgment and denying their subsequent motion based on the

 new covenant. We address each in turn.1

 A. Granting Plaintiffs’ Summary Judgment Motion

 Our standard of review from an order granting summary judgment is de novo.

 Forbis v. Neal, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007).

¶ 10 In its summary judgment order, the trial court concluded that the presence of

 the hens in Defendants’ backyard violated the 1998 covenant which prohibited the

 keeping of poultry on one’s property. Specifically, the covenant provides as follows:

 No animals, livestock or poultry of any kind shall be raised,
 bred or kept on the building site, except that dogs, cats or
 other household pets may be kept, provided that they are
 not bred or maintained for any commercial purpose.

 Because the first clause states that no “poultry of any kind” is allowed, the trial court

 concluded that Defendants’ hens were in violation. But the court did not consider

 1 On appeal, Defendants also argue that the trial court erred in denying their Rule

 12(b)(6) motion concerning Plaintiffs’ claim based on the 1998 covenant. We disagree,
 concluding that Plaintiffs adequately stated this claim in their complaint.
 BRYAN V. KITTINGER

 2022-NCCOA-201

 Opinion of the Court

 whether the fowl fell under the “household pets” language in the second clause.

¶ 11 As we evaluate this 1998 covenant, we are cognizant of the following principles

 from our Supreme Court regarding the interpretation of private restrictive covenants:

¶ 12 We are “to give effect to the original intent of the parties[.]” Armstrong v.

 Ledges Homeowners Ass’n, 360 N.C. 547, 555, 633 S.E.2d 78, 85 (2006). But if there

 is ambiguity in the language, the covenant is to be “strictly construed in favor of the

 free use of land[.]” Id. at 555, 633 S.E.2d at 85 (emphasis in original). This “rule of

 strict construction is grounded in sound considerations of public policy: It is in the

 best interests of society that the free and unrestricted use and enjoyment of land be

 encouraged to its fullest extent.” J.T. Hobby & Sons v. Family Homes Inc., 302 N.C.

 64, 71, 274 S.E.2d 174, 179 (1981). However, as parties have the freedom to agree on

 restrictions in their neighborhood, the canon favoring the free use of land “should not

 be applied in such a way as to defeat the plain and obvious purposes of a restriction.”

 Southeastern Jurisdictional Admin. Council, Inc. v. Emerson, 363 N.C. 590, 595, 683

 S.E.2d 366, 369 (2009) (citation omitted).

¶ 13 Turning to the 1998 covenant, we conclude that the keeping of poultry is clearly

 forbidden by the covenant’s first clause, as chickens are “poultry.” However, we must

 determine whether the covenant’s second clause could reasonably be construed to

 allow poultry if kept as “household pets.” We conclude that it does: While the first

 clause forbids the keeping of any “animals,” the second clause clearly allows the
 BRYAN V. KITTINGER

 2022-NCCOA-201

 Opinion of the Court

 keeping of animals, so long as they are “household pets” and otherwise not used for a

 commercial purpose. In the same way, where the first clause forbids the keeping of

 “poultry,” the second clause could be reasonably read to allow poultry—which, we

 note, are animals—kept as “household pets” and otherwise not kept for any

 commercial purpose.

¶ 14 This case is similar to Steiner v. Windrow Estates Home Owners Ass’n, 213 N.C.

 App. 454, 713 S.E.2d 518 (2011). In that case, our Court determined that two

 Nigerian Dwarf goats could fall within a “household pet” exception of a restrictive

 covenant. The covenant in that case provided that “[n]o animals, livestock or poultry

 of any kind shall be raised, bred or kept on any lot except that horses, dogs, cats or

 other [household] pets may be kept provided they are not kept, bred, or maintained

 for any commercial purposes[.]” Id. at 459, 723 S.E.2d at 522. We held that this

 covenant allowed “virtually any animal which may be treated as a ‘household pet’ to

 be kept on the homeowner’s property[.]” Id. at 464, 713 S.E.2d at 525 (emphasis

 added). We further held that the term “household pets” could include pets kept

 outdoors in the yard. Id. at 462, 723 S.E.2d at 525 (explaining why “the fact that the

 goats do not literally live inside the house [is not] dispositive of the issue”).

¶ 15 Though we conclude that the keeping of hens is not per se forbidden by the

 1998 covenant, we also conclude that Defendants were likewise not entitled to

 summary judgment. There is still a genuine issue as to whether they indeed keep
 BRYAN V. KITTINGER

 2022-NCCOA-201

 Opinion of the Court

 their hens as household pets and not otherwise for any commercial purpose. It is true

 that Defendants put on evidence tending to show that they consider their hens as

 household pets and that they do not sell the eggs laid by the hens. But our Supreme

 Court has instructed that a summary judgment motion should “ordinarily be denied

 even though the opposing party makes no response” where the “witness is inherently

 suspect [ ] because he is interested in the outcome of the case and the facts are

 peculiarly within his knowledge.” Kidd v. Early, 289 N.C. 343, 366, 222 S.E.3d 392,

 408 (1976). Here, though Defendants state that they consider their hens as pets, the

 fact-finder could disbelieve them. In any event, Plaintiffs did put on evidence that

 the only interaction Defendants have with the hens is when Defendants retrieve eggs

 from the coop.

 B. Denial of Defendants’ Rule 59/Rule 60(b)(5) Motion

¶ 16 In early 2020, an amendment to Sleepy Hollow’s covenants was recorded that

 allows each homeowner to keep up to five (5) hens. Based on this amendment,

 Defendants sought relief from the injunction contained in the 2019 summary

 judgment. Defendants cited Rule 60(b)(5) of our Rules of Civil Procedure that allows

 relief where “it is no longer equitable that the judgment should have prospective

 application.”

¶ 17 In denying the motion, the trial court concluded that the 2020 covenant was

 not valid because it had not been “properly executed.” The trial court erroneously
 BRYAN V. KITTINGER

 2022-NCCOA-201

 Opinion of the Court

 recognized Defendants’ motion as one made under Rule 59, which allows “[a] motion

 to alter or amend the judgment” in certain situations, rather than under Rule

 60(b)(5). See Doe v. City of Charlotte, 273 N.C. App. 10, 15-16, 848 S.E.2d 1, 6 (2020)

 (recognizing that “Rule 59 is not an appropriate means of seeking reconsideration of

 interlocutory, pre-trial rulings of the trial court”).

¶ 18 Our standard of review, however, is the same whether the motion was one

 made under Rule 59 or Rule 60. Davis v. Davis, 360 N.C. 518, 523, 631 S.E.2d 114,

 118 (2006) (“As with Rule 59 motions, the standard of review of a trial court’s denial

 of a Rule 60(b) motion is abuse of discretion.”)

¶ 19 In 2020, Sleepy Hollow recorded an amendment to its covenants that allows

 each homeowner to “keep up to five (5) hens provided that they are not bred or

 maintained for any commercial purpose.” The recorded document was executed by

 eleven (11) individuals, each of whom own a different lot in Sleepy Hollow.

¶ 20 The trial court’s determination that the covenant was not properly executed

 was based on the interplay of two statutes: N.C. Gen. Stat. § 47F-2-117 (2018) and

 N.C. Gen. Stat. § 41-58 (2018).

¶ 21 Subsection (a) of Section 47F-2-117 provides that a declaration may be

 amended “by affirmative vote or written agreement signed by lot owners of lots to

 which at least sixty-seven percent (67%) of the votes in the association are

 allocated[.]” Subsection (d) provides that “[a]ny amendment passed pursuant to the
 BRYAN V. KITTINGER

 2022-NCCOA-201

 Opinion of the Court

 provisions of this section or the procedure provided for in the declaration are

 presumed valid and enforceable.”2

¶ 22 Sleepy Hollow is made up of sixteen (16) lots.3 Accordingly, the affirmative

 vote of eleven (11) lot owners would be needed to amend a covenant under Section

 47F-2-117(a).4 The 2020 covenant was signed by eleven (11) individuals, each

 purportedly having an ownership in a different lot within Sleepy Hollow.

¶ 23 As the 2020 covenant is “presumed valid,” the burden is on Plaintiffs to show

 why it is not. The only argument advanced by Plaintiffs that the 2020 covenant is

 2 This right to amend covenants in this manner, though, is not unfettered. Our
 Supreme Court has held that only those amendments which are “reasonable” are enforceable.
 Southeastern v. Emerson, 363 N.C. 590, 596-97, 683 S.E.2d 366, 370 (2009).
 3 Neither party argues that Sleepy Hollow, which was established in 1998, is not a

 “planned community” subject to some of the provisions of the Planned Community Act,
 enacted in 1999. Section 47F-1-102(b)(1) states that the Act is not applicable to planned
 communities established in or after 1999 with 20 or less lots. Section 47F-1-102(c), however,
 subjects planned communities established before 1999 to certain provisions of the Act,
 without any language limiting its application to only those older communities with more than
 20 lots.
 Indeed, perhaps because it is not a contested issue on appeal it is not clear from the
 Record whether Sleepy Hollow is, in fact, a “planned community” as defined by the Act. The
 Act requires that for a neighborhood to be considered a planned community, its lot owners
 must “expressly [be] obligated by a declaration to pay [at least some] expenses to maintain,
 improve, or benefit other lots[.]” N.C. Gen. Stat. § 47F-1-103(23). It is unclear if the lot
 owners are obligated to pay for any such expenses. But we note that the 1998 covenants are
 self-described as a “Declaration” and contain a provision that the “individual lot owners” may
 be required to make “continuing monthly payments” for the maintenance of “underground
 electric cables” and “street lighting.” As the parties make no argument that Sleepy Hollow
 does not fit the Act’s definition of a “planned community,” and as it does not appear otherwise
 from the Record, we assume for purposes of this appeal that Sleepy Hollow fits the Act’s
 definition.
 4 The vote would pass the threshold at 68.75%.
 BRYAN V. KITTINGER

 2022-NCCOA-201

 Opinion of the Court

 not valid is based on their contention that some of those who signed the covenant own

 their lots as tenants by the entireties with their respective spouses. Plaintiffs rely on

 Section 41-58, which provides that “[n]either spouse may . . . encumber any property

 held by them as tenants by the entirety without the written joinder of the other

 spouse.” It was on this basis that the trial court denied Defendants’ motion.

¶ 24 Defendants, though, argue that the consent of the spouses is not required

 based on another provision of the Planned Community Act, which allows one owner

 of a lot to bind his co-owner(s) when voting on a matter at a meeting of the association

 if the co-owner(s) choose not to be present at the meeting:

 If only one of the multiple owners of a lot is present at a
 meeting of the association, the owner who is present is
 entitled to cast all the votes allocated to that lot. If more
 than one of the multiple owners are present, the votes
 allocated to that lot may be case only in accordance with
 the agreement of a majority in interest of the multiple
 owners[.]

 N.C. Gen. Stat. § 47F-3-110(a).

¶ 25 We hold that the trial court did not err for the following reasoning.

¶ 26 Section 47F-2-117 states that an amended covenant may be adopted by either

 “affirmative vote” or by “written agreement.” We note that the Planned Community

 Act does not require those in favor of amendment, under either method, to execute

 the document that is ultimately recorded. See N.C. Gen. Stat. § 47F-2-117(e)

 (describing how the recorded document may be executed).
 BRYAN V. KITTINGER

 2022-NCCOA-201

 Opinion of the Court

¶ 27 When an amendment is sought by vote at a duly called meeting, one spouse

 may bind the other where the other chooses not to attend, pursuant to Section 47F-

 3-110(a). We do not think that Section 41-58 would have any application to prevent

 this result since there is no requirement in the Planned Community Act that any

 owner sign anything to cast an affirmative vote and the spouse’s signature is not

 otherwise required on the instrument to be recorded.

¶ 28 The recorded 2020 covenant states its adoption was by “written agreement,”

 with no indication that it was the product of a vote from a duly called meeting. And

 Section 47F-3-110(a) does not apply to attempts to amend covenants by written

 agreement, where other owners would not necessarily have notice and have an

 opportunity to dissent.5

¶ 29 And since a restrictive covenant is an encumbrance/interest on real estate, see

 5 Where one enters into a written agreement as part of a duly called meeting, such

 action may be considered an “affirmative vote” and therefore binding on the non-attending
 spouse. But there is no indication in the recorded instrument or otherwise that the written
 agreement was the result of a vote at a meeting.
 We do not suggest that, where a single lot has multiple owners, the only way one
 owner could agree on behalf of the other owners is through a vote at a duly called meeting.
 For instance, the bylaws of the association or an agreement among the co-owners may
 authorize a single owner to vote on behalf of all co-owners through a written agreement.
 However, absent this sort of separate authorization, the Act does not allow proponents of an
 amendment to gain a vote of a lot by presenting a written agreement to only one of multiple
 co-owners. Otherwise, proponents of an amendment could bypass a potentially dissenting co-
 owner by procuring the signature of another co-owner on a written agreement. In any event,
 there is nothing in the Record before us that indicates, one way or the other, whether the
 married owners who signed the 2020 covenant had the authority to bind their spouses.
 BRYAN V. KITTINGER

 2022-NCCOA-201

 Opinion of the Court

 Hege v. Sellers, 241 N.C. 240, 248, 84 S.E.2d 892, 898 (1954) (holding that restrictive

 covenants fall within our Statute of Frauds), we hold that Section 41-58 applies.

 Indeed, there is nothing in the Planned Community Act that allows one owner to bind

 his co-owners outside of a vote taken at a duly called meeting. Otherwise, those in

 favor of an amendment could strip the right of a spouse/co-owner to dissent at a

 meeting by procuring the signature of the approving spouse on a written document

 outside of a called meeting.

¶ 30 We are not holding that the 2020 covenant is invalid. It may be that the

 covenant was voted on at a meeting. On remand, Defendants are free to move the

 trial court for leave to amend their answer to assert the 2020 amendment as a

 defense. However, the recorded document that was before the trial court and that is

 in our record states that the document was adopted by “written agreement.”

 Accordingly, we cannot say that the trial court abused its discretion in denying

 Defendants’ motion based on the 2020 amendment.

 III. Conclusion

¶ 31 We conclude that the 1998 covenant does not prevent a homeowner in Sleepy

 Hollow to keep hens as “household pets” and not otherwise for some “commercial

 purpose.” There is a genuine issue of material fact on this issue. Accordingly, the

 trial court erred in granting summary judgment in favor of Plaintiffs.

¶ 32 We further conclude that the trial court did not err by denying Defendants’
 BRYAN V. KITTINGER

 2022-NCCOA-201

 Opinion of the Court

 motion for relief based on the 2020 covenant.6

¶ 33 We remand the matter for further litigation of Plaintiffs’ claim based on the

 1998 covenant and of Plaintiffs’ private nuisance claim.7

 AFFIRMED IN PART, VACATED IN PART, REMANDED.

 Judges DIETZ and HAMPSON concur.

 6 Our holdings here are not binding on any other lot owner within Sleepy Hollow, as

 they are not parties to this action. We leave to the trial court and the parties on remand to
 examine whether, if appropriate, other lot owners should be joined as parties.
 7 In their complaint, Plaintiffs have essentially also alleged a private nuisance claim.

 Specifically, they have alleged that Defendants’ owning of chickens “prevents and interferes
 in the Plaintiffs’ lawful use and peaceful enjoyment of their property, and that said chickens
 create such noise as to interfere with the Plaintiffs’ sleep and rest . . . and as a result thereof
 the Plaintiffs have incurred damages[.]” See Jones v. Queen City Speedways, Inc., 276 N.C.
 231, 239, 172 S.E.2d 42, 47 (1970) (recognizing a private action against a neighbor who is
 engaging in a lawful enterprise on her property but in a manner as to disrupt the plaintiff’s
 ability to enjoy his property).