Firth *v.* Scherzberg, Appellant.

444

Argued November 15, 1950. Before Drew, C. J., Stearne, Jones, Bell, Ladner and Chidsey, JJ.

*Wesley H. Caldwell*, with him *Roper & Caldwell*, for appellants.

*Norman R. Bradley*, with him *Samuel Kagle* and *Benjamin Fertik*, for appellees.

Opinion by Mr. Justice Jones, January 2, 1951:

The plaintiff (joined later by a number of co-complainants) sued to restrain the defendants' use of an unimproved piece of land in Philadelphia as a terminal parking place for tractor-trailer trucks. The complaint averred that the use so made of the property constituted a nuisance *per se,* being an alleged violation of a municipal zoning ordinance, and also a nuisance in fact.

The defendants Scherzberg, husband and wife, jointly purchased a portion of the property in question

in 1924. From the time of this acquisition, the husband used the property as a storage or parking place for his trucks in his business of local and long distance hauling by motor vehicle as a private and public carrier. In 1932 the Scherzbergs purchased an adjoining piece of property upon which they erected a relatively large garage which Karl Scherzberg likewise used in the operation of his business. The next year (1933) the City of Philadelphia enacted a zoning ordinance whereby the premises in question were included in a "D" Residential Zone which restricted the use of property within the designated classification to multiple dwellings such as row houses. Scherzberg's use of the property for truck storage and parking having antedated the enactment of the zoning ordinance, he continued thereafter to use it uninterruptedly for such purpose as a permissible nonconforming use under the terms of the ordinance. In 1940 the Scherzbergs leased the premises to the defendant, Harry A. Blades, for his use in storing and parking his trucks or tractor-trailers there in connection with his business as a carrier of merchandise by motor vehicle,—a business which he conducted as an individual until 1949 when he incorporated it as Harry A. Blades, Inc., here also a defendant. The Blades company has since continued to use the property for the same business purposes. The use of the property consists of the parking or storage there of tractors and trailers, particularly the latter which ofttimes are interchanged between tractors according to the destinations of the cargoes and the economical disposition of the tractors. No freight is loaded or unloaded there; no garage work done; and no part of the premises is used by motor vehicles of anyone other than Harry A. Blades, Inc.

The learned chancellor filed an adjudication in which he held that the use of the property, so made or permitted by the defendants, constituted a nuisance

both *per se* and in fact and, thereupon, entered a decree nisi perpetually enjoining and restraining the defendants from conducting the motor terminal business operated by them on the premises in question. The decree also perpetually enjoins and restrains the defendants, their agents, servants or employees from blocking or obstructing a certain street upon which the property abuts. The court en banc, upon disposing of exceptions to the adjudication and decree nisi, entered a final decree in accord with the decree nisi, and the defendants Scherzberg brought these separate appeals.

We may as well at once dispose of the injunctive provision concerning supposed blocking or obstructing of the abutting street. The chancellor's action in such regard was purely gratuitous. There is not a single finding of fact with respect to the use made of the street by the defendants. That portion of the decree must, therefore, be vacated as constituting an excessive exercise of the court's power. The matter of the abutting street is entirely foreign to the theory of the complaint.

As to whether the business conducted by the Blades company amounted to a nuisance in fact, the chancellor found that "The coupling and uncoupling of tractors and trailers, the noise caused by the warming up of the large tractor motors, their acceleration, charging of tractor batteries, sounds of escaping air from the coupling and uncoupling of air brakes and their application, the shifting of gears, the switching of trailers, and muffler explosions and vibrations create great and disturbing noises, more disturbing during the hours between 10 P.M. and 6 A.M." and that "The disturbance, vibration, and noise is regular and continuous throughout the night, except on Saturday and Sunday nights, and in consequence thereof, Complainants and their families are disturbed in their rest and

sleep and the quiet peaceful enjoyment and habitation of their homes is interfered with and permanently impaired." These findings are supported by substantial evidence and were approved by the court en banc. They are, therefore, binding upon us on appeal: see *Woodbridge v. Hall,* 366 Pa. 46, 48, 76 A. 2d 205, and cases there cited. It follows, as a matter of law, that the business conducted by the defendants on the property in question constitutes a nuisance in fact "throughout the night" and, more particularly "during the hours between 10 P.M. and 6 A.M." In *Krocker v. Westmoreland Planing Mill Co.,* 274 Pa. 143, 146, 117 A. 669, we quoted from Joyce, Law of Nuisances, p. 216 Section 174, with reference to when noise may amount to a nuisance, as follows: "Noise which constitutes an annoyance to a person of ordinary sensibility to sound, so as to materially interfere with the ordinary comfort of life and to impair the reasonable enjoyment of his habitation to him, is a nuisance." See also *Baker v. Moore,* 311 Pa. 38, 43-44, 166 A. 362, where the foregoing was quoted from *Krocker v. Westmoreland Planing Mill Co.,* supra, with approval.

From the discussion contained in the adjudication and from the evidence there cited by the chancellor as support for the above-quoted findings, it is manifest that the sole ground of actionable complaint is that the noise made by the tractor-trailers *at night* and the flashing of their lights deprived the complainants of restful sleep and at times of any sleep at all. There are no findings that the operation of the trucking business on the defendants' property *in the daytime* materially interfered with the complainants' ordinary comfort of life or impaired their reasonable enjoyment of their habitations. Nor would the evidence support any such findings. It is obvious, therefore, that, so far as a nuisance in fact is material, the injunction issued by

the court below greatly exceeds the scope of the chancellor's competent findings in such regard.

The chancellor's conclusion of law that the operation of the trucking business on the defendants' property in the area zoned Residential "D" is unlawful and constitutes a nuisance *per se* conforms to his conclusion, as contained in the discussion, to the effect that "The business now conducted on the Scherzberg land is by no means similar to that conducted by Mr. Scherzberg before the ordinance was passed." But, no specific finding of fact of such import was made. In any event, the conclusion of ultimate fact, as above stated, is not supported either by direct findings or by the evidence. The only findings in such connection are that prior to the year 1940, the Scherzbergs "were using from three to five straight job motor trucks of light tonnage"; that in 1940, Blades "began to use the property as a tractor-trailer transfer or terminal and operated six tractors and trailers"; and that since 1940, "the number of tractors and trailers operated by Blades and Blades, Incorporated, has increased." Aside from the legal insufficiency of such findings to establish a change in the use of the property, they neither correctly nor adequately reflect the undisputed evidence. In 1932, when Scherzberg built the garage, he was operating "six trucks . . . from five to ten ton" each and a "four-wheel trailer"; and, in 1940, he was operating five motor trucks of five to ten tons each and "two tractors and two trailers". He testified without objection that the only difference between the business he conducted and what Blades did was "that I did some local work, which Harry Blades doesn't do now . . . Otherwise it is the same thing. In fact, the biggest part of my customers . . . he took over too" and he started to do business in 1940 with the "same kind of equipment that he has today, tractors and trailers". Indeed, the chancellor himself recognized that ". . . the

business is of the same nature in that the same goods or merchandise are transported . . . ." The conclusion which the record justifies is that the present use is but a continuation of the use existing at the time of the enactment of the ordinance.

Neither the natural growth of a business, existing at the time of the enactment of a zoning ordinance, nor the adoption thereafter of more modern instrumentalities, suitable and helpful in carrying on the business, works a change of use in legal contemplation. In *Cheswick Borough v. Bechman,* 352 Pa. 79, 82-83, 42 A. 2d 60, the late Mr. Justice PATTERSON pointed out that "The prohibition of the Ordinance [zoning] is directed to new uses; it imposes no restraint upon broadening the scope of the existing use. 'Neither the extent, quantity nor quality of the use is mentioned, but only that it must exist': *Haller Baking Company's Appeal,* [295 Pa. 257, 261]. The business carried on was the excavation of loam and sand loam. It is not essential that the use, as exercised at the time the Ordinance was enacted, should have utilized the entire tract. To so hold would deprive appellees of the use of their property as effectively as if the Ordinance had been completely prohibitive of all use. This result could not have been intended. Cf. *Valicenti's Appeal,* 298 Pa. 276; *Huebner v. Philadelphia Sav. F. Soc.,* 127 Pa. Superior Ct. 28. That modern and more effective instrumentalities are used in the business will not bring it within the prohibition of the Ordinance if in fact there was an existing use, provided these are ordinarily and reasonably adapted to the carrying on of the existing business: *Haller Baking Company's Appeal,* supra." Again, in *Humphreys v. Stuart Realty Corporation,* 364 Pa. 616, 621, 73 A. 2d 407, Mr. Justice STERN, speaking for this court, said that "a non-conforming use cannot be limited by a zoning ordinance to the precise magnitude thereof which existed at the date of the ordinance; it

may be increased in extent by natural expansion and growth of trade, neither is it essential that its exercise at the time the ordinance was enacted should have utilized the entire tract upon which the business was being conducted [citing cases]."

It follows from the foregoing that the operation of the trucking business on the defendants' property is not a nuisance *per se* and that it constitutes a nuisance in fact only in so far as it is carried on in the night-time. The decree will therefore be modified to the extent of limiting the restraint of the injunction against the conduct of the trucking business on the property in question to the hours from 8 P.M. to 7 A.M. and vacating the provision concerning the defendants' use of the abutting street.

As modified, the decree is affirmed; the parties to bear their own costs.