Norwalk Truck Line Co.

*Nicholas Unkovic, Walter T. McGough, Charles R. Burke* and *Reed, Smith, Shaw & McClay,* for appellant.

*Anne X. Alpern,* City Solicitor, and *J. Howard Devlin,* Assistant City Solicitor, for appellee.

*James R. Orr, Reed, Smith, Shaw & McClay, Alexander Unkovic, Kountz, Fry & Meyer, Ben Paul Jubelirer* and *James L. Poth,* for intervenors.

KENNEDY, J., August 13, 1951.—The above-captioned proceeding is the petition of Norwalk Truck Line Company for a certiorari to the board of adjustment, under the Zoning Ordinance of the City of Pittsburgh, to review the decision of that board which, on August 17, 1950, granted a protest and gave directions to the bureau of building inspection in the following language:

"Resolved, that the Bureau of Building Inspection be and is hereby requested to order the cessation of the

use of the property in the 800 block of Lockhart Street as a motor truck terminal."

The return of the board discloses that 42 persons residing in the 800 block of Lockhart Street, Pittsburgh, had filed a protest with the board of adjustment claiming, inter alia, that they were annoyed by noxious fumes emanating from motor trucks, dust from the terminal warehouse yard operated by Norwalk Truck Line Company, noises and vibration caused by the movement of trailer tractors on Lockhart Street and in the terminal yard, noises from making repairs to equipment, and loud and unseemly language used by the employes of this appellant.

Written notice was given to the local manager on August 2, 1950, that a hearing would be held on August 7th. A copy of the protest was not enclosed, with the result that this local manager did not notify the officials of appellant, who are located at Norwalk, Ohio, of the proceeding, nor was he accompanied at the hearing by counsel. No notice of the hearing was given to Citizens National Bank of Norwalk, Ohio, trustee of the Norwalk Truck Line Company's Employees Profit Sharing Trust, the legal owner in fee of the property involved. After the appeal was allowed, and agreeable to Pa. R. C. P. 2327, various parties represented by counsel have petitioned this court to intervene, as follows: three adjacent owners of residential property and residing therein, as parties plaintiff; trustee owner of the real estate involved, as intervening defendant; 17 motor truck transport terminal operators with terminals in same zoning classification as appellant, as intervening defendants; and Local 249 of Teamsters, etc., Union, as intervening defendant.

Because of the limited testimony taken at the hearing before the board of adjustment as shown by the return, on petition, oral testimony and exhibits were authorized and in fact the hearing became practically a

hearing de novo. Two hundred and fifteen pages of testimony as transcribed were taken, and more than 20 exhibits introduced. The board of adjustment made out its prima facie case by offering the relevant parts of the return, and rested. A motion was made to sustain the appeal for the reason that it was claimed the board of adjustment, under a zoning ordinance and the zoning laws of the Commonwealth, was not authorized to assume original jurisdiction. A further motion was made by the trustee owner of the property involved for the reason that it received no notice of the hearing, as contemplated in law. Because all parties wished a ruling on the merits of the decision of the board from which this appeal was taken, ruling on the motions to sustain was deferred.

The terminal operated by petitioner appellant, Norwalk Truck Line Company, is located in a Light Industrial District, under the provisions of the Zoning Ordinance of Pittsburgh of 1923. The ground incorporates 35,000 square feet. The buildings consist of an office, a large one-story storage house, with loading platforms around two sides of it, and a small workshop. It is known as No. 839 Lockhart Street, twenty-third ward. This terminal is located on the southerly side of Lockhart Street, from which street the trucks go in and out of the warehouse. It runs back in a northerly direction to another public street known as North Canal Street. Approximately 70 persons are employed at the terminal, and an average of 50 trucks move in and out during every 24-hour period except Sunday. Immediately North of North Canal Street, the Pennsylvania Railroad maintains a main line consisting of two tracks and elevated from North Canal Street roadway. In this Light Industrial area there are a large repair garage, a gas service station, numerous warehouses and small manufacturing plants, and also a number of social clubs.

On the northerly side of Lockhart Street west of the terminal and in the 800 block, there are a number of residences. On the southerly side of this same street and in the same block are practically all dwelling houses. Most of these are quite old, but they have been well built and are in good repair and adaptable for homes or rooming houses.

A substantial part of the land now used as a terminal was occupied from before 1900 as a wholesale flour mill warehouse. When motor trucks supplanted the horse and wagon, trucks were used by the operator of this warehouse for hauling the flour to it and making deliveries from it. In 1929 the owner of the warehouse sold the property to one Oscar Tiedeman, who was in the trucking business, and he moved in. The deposition of Mr. Tiedeman discloses that from that time on he used the premises as a truck and automobile repair shop and a truck sales agency and also in his trucking operations, and that later he extended his operations when he purchased an unused convent building that was adjacent. He loaded and unloaded interstate trucks including large tractors and trailers, at the warehouse which he operated. He stated that during the peak of his operations there would be 40 to 75 trucks in and out of this terminal per day, which operated on a 24-hour basis.

In 1946 Tiedeman sold this property to Citizens National Bank of Norwalk, trustee as aforesaid, for the sum of $29,000. This trustee on July 31, 1947, leased these premises to appellant for a five-year term at an annual rental of $3,900, lessor to pay the taxes.

There was testimony from a real estate expert that the highest and best use for this property was that of a motor transport freight terminal, that used for this purpose it has a value of $52,770, and that if its use as a terminal would be prohibited, it would have a value of $26,500. Expert testimony was also given to the

effect that at the present time there is no available space in Heavy Industrial Districts in Pittsburgh adaptable for use as a motor transport freight terminal.

The Pittsburgh Zoning Ordinance of 1923 in Light Industrial Districts prohibits the use of land and buildings in such a district for 34 detailed specific purposes. Most of these prohibitory uses deal with the manufacture or fabrication of articles that are inherently dangerous, or in the making of same would cause the emanation of unusual and disturbing noxious gases or fumes, or would require excessive noise in the making of them. Motor transport terminals, repair garages, gasoline filling stations, warehouses and like types of business are not within the prohibited uses. The thirty-fifth prohibited use in a Light Industrial District is set forth in the ordinance as follows:

"And, in general, those uses which may be noxious or offensive by reason of the emission of odor, dust, smoke, gas, vibration or noise."

It is based on this comprehensive prohibited use that it is now urged that appellant is violating the provisions of the zoning ordinance in operating a motor transport freight terminal in this Light Industrial District.

The question involved in this proceeding is virtually stare decisis in this court since May 21, 1947: In re Appeal of Maryland Transport Lines from the decision of Board of Adjustment under zoning section no. 127 of 1947, City of Pittsburgh, at July term, 1947, 428. An appeal was taken from the refusal of the board of adjustment to grant to Maryland Motor Lines a building permit for the erection of a one-story motor freight terminal on a lot of ground in the twenty-first ward, City of Pittsburgh, located at the corner of Metropolitan and Liverpool Streets, and which was zoned as Light Industrial District. Judge Smart, the opinion

writer for the court, held that no. 35 of the prohibited uses (quoted supra) did not rule out the use of land and buildings in such a district for a motor transport freight terminal, and directed that a building permit issue. No appeal was taken from this decision. The record discloses that from 1927 up to 1950, 50 buildings or occupancy permits have been granted by the Pittsburgh authorities in Light Industrial Districts for motor transport freight terminals and warehouses. The board of adjustment directed a permit issue, according to the testimony, for a like purpose and in a like district while this appeal was pending.

In the Maryland Motor Lines appeal, supra, the petition averred, inter alia, the following:

"That the officials of the City of Pittsburgh had repeatedly interpreted the said classification of 'light industrial' district as contained in the zoning ordinance as permitting the construction of buildings of a similar nature and devoted to an identical use (motor freight terminal) ; and

"That the use to which it was proposed to devote the said building (motor freight terminal) was not among the uses prohibited under Section 6 of the said zoning ordinance."

The board of adjustment and the City of Pittsburgh, in the answer to the petition which accompanied the return, admitted these averments. It is therefore difficult to understand why in this instant proceeding the same allegations in the petition were denied in the answer of the board and the city.

Zoning ordinances must, to remain constitutional, be enforced with uniformity. To deny to this appellant its continuing right to use its leased premises for a terminal would violate this inflexible rule of law.

Numerous citations from appellate courts have been called to our attention. However, the view that we take of this proceeding does not require that they be ana-

lyzed. The only argument submitted by the board and the three intervening plaintiff property owners, that the Maryland Motor Lines decision and order does not apply to this proceeding, is that there was no evidence given at the hearing of offensive emission of odor or dust from the terminal yard, or vibration or unseemly and loud talking. A reading of the testimony given by the residential property owner intervenors will disclose that even their complaints are limited to intermittent annoyances. In any event, their remedy for some of these complaints lies primarily with the police authorities, and are not matters for decision and ruling in this type of proceeding.

We are here dealing solely with an interpretation of a zoning ordinance. It is probably correct that these residential intervenors have suffered some depreciation in the value of their real estate as a result of it being included in a Light Industrial District. However, that should have been considered by the legislative authorities of the City of Pittsburgh when the ordinance was passed; it is not an item that can be considered in this appeal. If the manner in which this terminal is being operated results in unreasonable noises, unnecessary setting up in the neighborhood noxious odors, fumes, etc., neglect to keep its terminal yard oiled or properly surfaced, thus resulting in dust clouds coming from the yard, or other types of annoying things, then these property owners will still be protected in a court of equity: Firth v. Scherzberg, 366 Pa. 443.

Because of the conclusion that we have reached, it is not necessary to rule on appellant's secondary argument, viz., that in all events it is entitled to continue to use the premises as a motor freight terminal, because it is clearly established that this use is a nonconforming one for many, many years, agreeable to the zoning enforcement authorities of the City of Pittsburgh. The appeal will be sustained.