# Clavelli v. Ferrotech Corp.

C.P. of Lawrence County, no. 10251 of 2008.

*Phillip L. Clark Jr.,* for plaintiffs.
*Paul Lynch,* for defendant.

COX, *J.,* August 5, 2010—Before the court for disposition is the petition for preliminary injunction filed on behalf of the plaintiffs Joseph L. Clavelli and Victoria C. Lauro, t/d/b/a Clavelli and Lauro Management Company, which argues that the defendant Ferrotech Corporation should be enjoined from utilizing a procedure for breaking iron and steel that includes dropping a large metal sphere because that procedure causes noise and vibrations that violate City of New Castle Zoning Ordinance section 1329.07. Moreover, that procedure constitutes a private nuisance and affects the daily business operations of the lessees of the plaintiffs' facility.

Joseph L. Clavelli and Victoria C. Lauro are doing business as Clavelli Management Company with its

principal place of business located at 104 Margaret Street, New Castle, Lawrence County, Pennsylvania. Ferrotech Corporation is a Delaware corporation located at 526 South Jefferson Street, New Castle, Lawrence County, Pennsylvania, which is a metal scrapping business. The subject of this litigation is a procedure used by Ferrotech that includes the cutting and breaking of large metal objects by dropping a heavy metal sphere onto the metal objects and breaking them into smaller pieces.

Joseph L. Clavelli and his sister, Victoria Lauro, are the owners of property located at 104 Margaret Street, New Castle, Pennsylvania, which is adjacent to the Ferrotech facility. Mr. Clavelli purchased the property in 1968, sold the same in 1988 and purchased the property again approximately one year later. When Mr. Clavelli initially purchased the land he asserts it was zoned commercial and he constructed a building on the premises in 1969, which was the office of Vocational Rehabilitation. However, Mr. Clavelli testified that the land was rezoned to industrial or light industrial by 1988, which was before he purchased the property for the second time at a sheriff's sale in 1989. It is important to note that, subsequently, the parties have stipulated that the Plaintiffs' building is located in an area that has always been zoned as heavy industrial and was never zoned as commercial. The tenants of the building are the office of Vocational Rehabilitation, PA Career Link and the Pennsylvania Department of Health. Mr. Clavelli has received complaints regarding the loud noise and vibrations caused by Ferrotech dropping the metal sphere. It must be noted that the Pennsylvania Department of Health entered into a new lease with Mr. Clavelli, but it was contigent upon Mr. Clavelli's assurance that he was pursuing an

injunction to prevent Ferrotech from dropping the metal sphere.

In response to the Plaintiffs' petition for preliminary injunction, the parties entered into extensive negotiations and reached a temporary agreement. As a result, the court issued an order dated April 11, 2008, which restricted the times that Ferrotech could drop the metal sphere. That order stated that Ferrotech could utilize the metal sphere dropping procedure from Friday evening at 6 p.m. until Monday morning at 7 a.m., and from 9 p.m. until 7 a.m., Monday through Thursday. On July 9, 2008, the court modified that court order to permit Ferrotech to drop the metal sphere from Friday evening at 5:30 p.m. until Monday morning at 7:30 a.m., and from 8 p.m. until 7:30 a.m., Monday through Thursday. Again, on March 5, 2009, the court modified its order to permit Ferrotech to drop the metal sphere until 9 a.m., Monday through Friday and from 12 noon until 1 p.m. Monday through Friday.

At the evidentiary hearing held by this court on July 3, 2008, the plaintiffs provided the testimony of Kathy DeCaprio, who is a registered nurse for the Pennsylvania Department of Health and is employed at 106 Margaret Street, New Castle, Pennsylvania. She testified that she heard loud shattering noises coming from the direction of the Ferrotech facility during her normal working hours of 8 a.m. to 4 p.m. She has had pictures and clocks fall from the wall due to the vibrations. Ms. DeCaprio stated that the noises occurred as frequently as every five minutes. They often have to inform members of the public about the noises or calm them down after they hear the loud crashing sound. She also informed the court that

the disruptions ceased for approximately one month after the court's April 11, 2008, order, but they soon began occurring again.

Celeste Dute, who also testified at that hearing, is employed by the Pennsylvania Department of Labor and Industry, Office of Vocational Rehabilitation as a district administrator and her place of employment is located at 100 Margaret Street, New Castle, Pennsylvania. She explained that the building shakes periodically and they frequently have to inform business invitees that they should not be alarmed by the shaking building. Ms. Dute stated that the vibrations emanate from the Ferrotech facility. She did not notice anything moving within her office, but could feel the ground vibrating underneath her feet. She also mentioned that Ferrotech dropped the metal sphere on April 28, 2008, which was subsequent to the April 11, 2008, court order.

Eileen Marie Borrelli, who is employed as a Career Link advisor for PA Career Link, which is located at 102 Margaret Street, New Castle, Pennsylvania, testified that the building where she is employed is located behind or directly across the parking lot from the Ferrotech Corporation. She recalled an incident when she could feel vibrations, "like an earthquake", when they would drop the large metal sphere at Ferrotech, which was a different company at that time. She could hear a loud "boom" when the ball was dropped and could feel the movement or vibration under her feet. Ms. Borelli expressed some concern for the Career Link equipment and computers due to the vibrations caused by Ferrotech dropping the metal sphere. She also stated that three flags in her office often become askew from the vibrations. She further testified that Ferrotech has dropped the ball between the

hours of 7:30 a.m. and 9 a.m. after the court issued the April 11, 2008, court order. It must be noted that Ms. Borrelli indicated that there are vibrations emitted from the movement of nearby trains, but they are not to the extent of the vibrations caused by the dropping of the metal sphere at Ferrotech.

On July 3, 2008 and March 9, 2009, Charles S. Barletto, who is the vice president of business development for Ferrotech, testified before this court. He stated that Ferrotech would hoist a 6- or 9.3-ton forged steel ball or sphere above oversized pieces of steel or iron and then drop the sphere to break the pieces into smaller sized pieces which could be loaded onto trucks or rail cars for shipment to customers. Mr. Barletto informed the court that Ferrotech's gross annual sales are approximately $50,000,000 or $60,000,000. However, he testified that if Ferrotech was not permitted to utilize the sphere dropping procedure, it would lose a significant amount of money and it may not be able to compete with other businesses. He also explained that the crane used to lift the metal sphere is also used to move 30-ton pieces of steel or iron on the premises. He stated that the vibrations which occurred after the April 11, 2008, court order could have been caused by the dropping of a 30-ton piece of metal, which would make a louder noise and more vibrations than the 6- or 9.3-ton metal sphere. He also informed the court that Ferrotech's production has been slowed due to the imposition of the April 11, 2008, court order. Mr. Barletto admitted that Ferrotech dropped the metal sphere five times at 2 p.m., even though the April 11, 2008, order prohibited the same, because he was trying to decipher a way to soften the impact of dropping

the sphere to reduce noise and vibrations. It must be noted that he did so without informing Mr. Clavelli or the court. Mr. Barletto indicated that Ferrotech no longer has a crew working at nights and is no longer dropping the metal sphere. However, he stated that if they would drop the metal sphere it would have to occur between the hours of 7 a.m. to 4 p.m. and it would have to be dropped between 20 to 50 times.

On January 6, 2009, the plaintiffs provided the expert testimony of Kenneth K. Eltschlager, who is employed by Keystone Engineering located in McMurray, Pennsylvania. Mr. Eltschlager obtained a Bachelor's of Science degree in mining engineering from West Virginia University and worked for Mountain State Surveying in Preston County, West Virginia. He was subsequently employed by SRW Associates doing coal mine-permitting work and moved to the state of Maryland to work for the Maryland Bureau of Mines. He was also employed by the U.S. Department of Interior, the office of Surface Mining Reclamation Enforcement as a mining engineer working with blasting and explosive-related issues. Mr. Eltschlager observed and recorded the vibrations on the plaintiffs' property as a result of the metal sphere being dropped. He installed three blasting seismographs, which monitor vibrations on the property, one in the office of Vocational Rehabilitation and two at the Pennsylvania Department of Health facility. It must be noted that one of the monitors was placed on the wall in the Pennsylvania Department of Health facility, the other monitors were placed on the floor. The monitor on the wall gauged whether there was any damage occurring to the building itself and the floor monitors gauged the impact of the incoming vibrations on the floor and the effect it would

have on people. The vibration levels were measured by the waves of energy that went into a given location and the reports were made by providing the peak particle velocity or "PPV". Any measurement below 20 hertz is considered a low frequency vibration, which has the strongest impact on people. The highest recorded PPV at the Office of Vocational Rehabilitation was .12 inches per second and it had a frequency of 7.6, which was the closest side to the Ferrotech facility. The American National Standards Institute (ANSI) has set forth standards for reviewing vibration levels and what level of vibration would be noticeable or disturbing to occupants. Mr. Eltschalger has opined that the lowest perceivable vibration for human perception in an office environment is approximately .052 inches per second. Mr. Eltschlager measured two events at the office of Vocational Rehabilitation that exceeded the ANSI standards for an office environment. Utilizing the ANSI standard, Mr. Elschlager opined that the vibrations, especially those events that registered above .1 inch per second, are significant enough to startle someone on the plaintiffs' property.

On March 9, 2009, the defendant provided the expert testimony of W. Gregory Love, who has a Bachelor of Science degree in geology from Penn State University and a Bachelor's degree in science education from the University of Wyoming. He worked almost 19 years with Vibra-Tech Engineers, a consulting firm specializing in industry vibration problems and concerns, and regularly monitored and inspected vibrations or noise from blasting, construction, pile-driving and ball drops. In 1997, he was asked by Mr. Barletto to monitor the effects of the ball drops at the facility on the neighboring structures. Mr. Love also used standard blasting seismographs and

monitored the vibrations within the Ferrotech facility and worked his way out to the Office of Vocational Rehabilitation. He compared the readings from the seismographs to the standards developed by United States Bureau of Mines that were created to address blasting complaints. Mr. Love's intent was to determine if the frequency and vibrations caused by dropping the metal ball would cause physical structural damage to surrounding buildings. His conclusion was that the vibration levels created by the dropped balls were of insufficient magnitude to cause structural damage to the plaintiffs' building.

The court must now determine whether a preliminary injunction restricting Ferrotech's use of the ball dropping procedure is appropriate. The courts of equity have the power to issue injunctions to prevent the commission or continuance of acts that prejudice the interests of an individual, the community or the public generally. *Bruhin v. Commonwealth,* 14 Pa. Commw. 300, 304-305, 320 A.2d 907, 910 (1974) (citing *Rankin v. Chester-Upland School District,* 11 Pa. Commw. 232, 312 A.2d 605 (1973)). The party seeking a preliminary injunction must establish the following six prerequisites:

"(1) that the injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages;

"(2) that greater injury would result from refusing an injunction than from granting it, and concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings;

"(3) that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct;

"(4) that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits;

"(5) that the injunction it seeks is reasonably suited to abate the offending activity; and

"(6) that a preliminary injunction will not adversely affect the public interest." *Warehime v. Warehime,* 580 Pa. 201, 209-210, 860 A.2d 41, 46-47 (2004).

The party seeking the preliminary injunction bears the burden of establishing each of the aforementioned elements. *Id.* It is important to note that an injunction is an extraordinary remedy and it should be issued with caution in cases where the plaintiff's right to equitable relief is clear and free from doubt, and where the harm to be remedied by the injunction is great and irreparable. *Big Bass Lake Community Association v. Warren,* 950 A.2d 1137, 1144 (Pa. Commw. 2008). The requisites of a preliminary injunction are cumulative and if one element is lacking then relief may not be granted. *Leonard v. Thornburgh,* 75 Pa. Commw. 553, 563, 463 A.2d 77, 82 (1983).

A court of equity may enjoin an otherwise lawful business when its operation is so unreasonable that it creates a nuisance. *Dexter v. Bebenek,* 458 Pa. 1, 2, 327 A.2d 38, 39 (1974) (citing *Guarina v. Bogart,* 407 Pa. 307, 180 A.2d 557 (1962); *Reid v. Brodsky,* 397 Pa, 463, 156 A.2d 334 (1959)). "A nuisance is the invasion of another's interest in the use and enjoyment of his land." *Harford Penn-Cann Service Inc. v. Zymblosky,* 378 Pa. Super. 578, 582, 549 A.2d 208, 209 (1988) (citing Restatement (Second) of Torts, §822 (1979)). That invasion

must cause significant harm and that harm must be more than a slight inconvenience, which means there must be "a real and appreciable interference with the plaintiff's use or enjoyment of his [or her] land." *Id.*

The court in *McKees Rocks Borough v. Rennekamp Supply Co.,* 344 Pa. 443, 25 A.2d 710 (1942), addressed the issue of enjoining a lawful business from operating due to the business causing a nuisance to a residential neighborhood. The plaintiffs in *McKees Rocks Borough* were the residents of a neighborhood that was purely residential in character, except for the defendant's block concrete manufacturing business. The process of producing concrete blocks causes loud clanking noises, which is heard and the vibrations transmitted to the plaintiffs' houses. Damages to those homes included: cracking of plaster, pillars moved out of alignment and the rattling of doors. Additionally, the noise and vibration prevented the plaintiffs from sleeping and interrupted their peaceful enjoyment of their homes. The trial court issued a permanent injunction, which prevented the defendant from continuing its business. The defendant appealed that decision. The Pennsylvania Supreme Court affirmed the ruling of the trial court.

Initially, the *McKees Rocks Borough* court noted the defendant's argument that the concrete block manufacturing business was lawful and it employed a number of people within that community. *Id.,* 344 Pa. at 445, 25 A.2d at 711. However, the court reasoned that the business was being conducted in an otherwise purely residential area, the plaintiffs acquired their homes prior to the establishment of the business and the manufacturing of concrete block caused damage to those homes. *Id.,*

344 Pa. at 445-46, 25 A.2d at 711. Therefore, the court ruled that the trial court properly enjoined the defendants from manufacturing concrete block. *Id.*

Also in *Firth v. Scherzberg,* 366 Pa. 443, 77 A.2d 443 (1951), the plaintiff sought to enjoin the defendants and the defendant's lessee from utilizing the property as terminal parking for tractor-trailer trucks. Initially, the defendants purchased property to use as storage for tractor-trailer trucks. Approximately eight years later, the defendants purchased an adjoining piece of property and erected a large garage used to further conduct their business. The next year, the City of Philadelphia enacted a zoning ordinance which restricted the use of property within that designated area as a residential zone. The defendants continued to conduct their business on that property until they leased the premises to another individual to be used for similar purposes. It must be noted that the property was utilized for storage, the defendants and the lessee did not unload or load freight or conduct garage work on the premises. However, the chancellor determined that the coupling and uncoupling of tractors and trailers, the noise caused by warming up the large tractor motors, their acceleration, charging of tractor batteries, and the sound of the air brakes and the shifting of gears disrupted the sleep of surrounding residents and the peaceful enjoyment of their homes. Thus, the chancellor issued an injunction limiting the lessee's use of the facility. The lessee appealed and the Pennsylvania Supreme Court affirmed the chancellor's decision, but modified the injunction to prevent the lessee from conducting business on the property between the hours of 8 p.m. to 7 a.m.

64

The *Firth* court stated, "Noise which constitutes an annoyance to a person of ordinary sensibility to sound, so as to materially interfere with the ordinary comfort of life and to impair the reasonable enjoyment of his habitation to him, is a nuisance." *Id.,* 366 Pa. at 447, 77 A.2d at 445 (citing *Baker v. Moore,* 311 Pa. 38, 166 A. 362 (1933)). The court noted that the plaintiff's sole actionable claim is that the lessee's business deprived them of sleep at night; however, there were no facts that the business caused disruption during the daytime. *Id.,* 366 Pa. at 447, 77 A.2d at 446. Additionally, the *Firth* court noted that the chancellor's finding that the trucking business was unlawful in a residential area and constituted a nuisance *per se* was incorrect as the business existed prior to the rezoning of the area to residential and the noise merely caused disruption during the night. *Id.* Thus, the chancellor's determination was not supported by the evidence of record. *Id.* As a result, the Pennsylvania Supreme Court held that the lessee was enjoined from conducting business between the hours of 8 p.m. to 7 a.m. to prevent any sleep deprivation caused by the noise and lights from the tractor-trailers. *Id.,* 366 Pa. at 450, 77 A.2d at 447.

In the case sub juice, there were several evidentiary hearings held by this court, in which the plaintiffs provided the testimony of several individuals who are employed at the facility owned by the plaintiffs, all of whom testified to the adverse effects that Ferrotech's metal sphere dropping procedure had on the plaintiffs' facility. First, Kathy DeCaprio, an employee of the Pennsylvania Department of Health, testified regarding the loud noises emanating from the Ferrotech facility and that the vibrations often caused pictures and clocks to fall off of

the wall. She also stated that the noises occurred as frequently as every five minutes and she often had to inform members of the public about the noises or calm them down after they heard the loud crashing sound.

Next, Eileen Marie Borrelli, an employee of PA Career Link testified that she could feel vibrations, "like an earthquake", when the large metal sphere at Ferrotech would drop. She also stated that she could hear a loud "boom" when the ball was dropped. She had concerns about the Career Link equipment and computers due to the vibrations caused by Ferrotech dropping the metal sphere. She further explained that she has three flags in her office and the vibration would cause them to become askew.

Moreover, Celeste Dute, an employee of the Pennsylvania Department of Labor and Industry, explained that the building shakes periodically and they frequently have to inform business invitees that they should not be alarmed by the building shaking. Ms. Dute stated that she could feel a vibration on the ground that emanated from the Ferrotech facility.

The court also recognizes that the both parties provided the testimony of expert witnesses. First, Kenneth K. Eltschlager testified on behalf of the plaintiffs and he opined that the vibrations caused by the metal sphere dropping procedure were significant enough to startle a person conducting business within the plaintiffs' facility, Conversely, Ferrotech has provided the testimony of W. Gregory Love, who opined that the vibration levels caused by the metal sphere dropping procedure were of insufficient magnitude to cause structural damage to the plaintiffs' facility. While it may be true that the vibrations

do not cause serious structural damage to the facility, they are still perceivable by people working in an office environment and could cause apprehension among business invitees. That disruption could inhibit the manner in which the plaintiffs' lessees conduct business and it could be cause for them to seek another facility.

The court must note that Ferrotech is engaged in a lawful business as its facility is located in an area that is zoned industrial. However, the City of New Castle has promulgated zoning ordinance section 132907, which requires that a business engaging in an industrial use that results in vibrations or excessive noise take reasonable steps to ameliorate the adverse effects of that activity. There is no mention on the record that Ferrotech employed or proposed any measures to reduce or eliminate the noise and vibrations caused by dropping the metal sphere, even though it previously consulted Mr. Love regarding any possible steps that could be made to ameliorate that problem. According to the decision in *McKees Rocks Borough, supra,* the court is permitted to enjoin an otherwise lawful activity, if the same interferes with the quiet enjoyment of adjoining properties. In that case, the vibrations caused by the concrete block manufacturing procedure caused damage to adjoining residences. Similarly, the vibrations caused by Ferrotech's metal sphere dropping procedure caused pictures and clocks to fall from the wall at the plaintiffs' facility and could possibly damage computers and other electronic equipment.

Additionally, the *Firth* court reasoned that the only actionable disruption in that case occurred during the night when the local residents had their sleep disrupted

by the lessee's trucking operation. As a result, the court held that the chancellor's injunction preventing the lessee from conducting his business as a whole was too broad and the court imposed an injunction preventing the lessee from conducting business at night to remedy the plaintiff's claims. In the current matter, the plaintiffs are merely asserting that the vibrations caused by Ferrotech's metal sphere dropping procedure are disruptive to the daily business conducted on the premises between the hours of 8 a.m. to 5 p.m. As in *Firth,* the current order issued by the court permits Ferrotech to drop the metal sphere from 5:30 p.m. on Friday to 9 a.m. on Monday and 8 p.m. to 9 a.m. and 12 noon to 1 p.m., Monday through Friday. Thus, Ferrotech is not permitted to utilize that procedure during the peak working hours at the plaintiffs' facility to reduce any possible interruptions to the plaintiffs' current lessees. Conversely, Ferrotech is permitted to drop the metal sphere on weekends, nights, early mornings and for an hour starting at 12 noon Monday through Friday, so that it may continue to be productive under the current circumstances. The court is aware that Ferrotech usually employs its staff during normal business hours; however, it may be able to employ a limited staff at night and on weekends to drop the metal sphere during the hours permitted by the court. Additionally, the plaintiffs' lessees may have to change meeting times or issue warnings to avoid startling business invitees that enter the premises prior to the hours set forth in the accompanying order of court.

Therefore, the court grants the plaintiffs' petition for preliminary injunction, but Ferrotech is permitted to utilize the sphere dropping procedure as authorized in

68

the order of court accompanying this opinion. This case may now proceed toward trial and, ultimately, the possible imposition of a permanent injunction. Pursuant to Pa.R.C.P. 1038.2, the parties or the court may make a motion or petition to submit this case to a jury, which would not be binding on the court but merely advisory to achieve an equitable resolution of the issues in this case. It must be noted that the court is amenable to further case management on this matter to aid the parties in reaching an efficient resolution of any outstanding issues.

For the reasons set forth in this opinion, the court grants the plaintiffs' petition for preliminary injunction, but Ferrotech Corporation is permitted to drop the metal sphere as outlined by the court.

## ORDER

Now August 5, 2010, this case being before the court on numerous occasions for a hearing on the petition for preliminary injunction filed by the plaintiffs, with both parties appearing, the plaintiffs, Joseph L. Clavelli and Victoria C. Lauro, partners, t/d/b/a Clavelli and Lauro Management Company, represented by counsel, Phillip L. Clark Jr., Esquire and the defendant, Ferrotech Corp., represented through counsel, Paul Lynch, Esquire and after hearings held, the court enters the following order and it is hereby ordered, adjudged and decreed as follows:

(1) In accordance with the attached opinion, the petition for preliminary injunction filed by the plaintiffs is hereby granted as set forth in this order of court.

(2) The prior order of court and time schedule for the preliminary injunction as contained in the order of court

dated March 5, 2009, shall remain in full force and effect until modified or changed by further order of court.

(4) The prothonotary is directed to serve a copy of this order of court upon counsel of record, Phillip L. Clark Jr., Esquire and Paul Lynch, Esquire.